# EXHIBIT A



**null / ALL**
**Transmittal Number: 21268610**
**Date Processed: 03/13/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Nationwide Mutual Insurance Company<br>Entity ID Number  3277054 |
| **Entity Served:** | Nationwide Mutual Insurance Company |
| **Title of Action:** | MSJ REX Holdings, LLC, d/b/a Shell Food Mart vs. Nationwide Mutual Insurance Company |
| **Matter Name/ID:** | MSJ REX Holdings, LLC, d/b/a Shell Food Mart vs. Nationwide Mutual Insurance Company (10105447) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County State Court, GA |
| **Case/Reference No:** | 20-C-01686-S1 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 03/13/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | The Huggins Law Firm, LLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882   |   sop@cscglobal.com

E-FILED IN OFFICE - NS
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**20-C-01686-S1**
**3/9/2020 4:32 PM**

CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**MSJ Rex Holdings, LLC,**
**d/b/a Shell Food Mart**
5969 Highway 42
Rex, GA 30273

**CIVIL ACTION NUMBER:** **20-C-01686-S1**

### PLAINTIFF

### VS

**Nationwide Mutual Insurance Company**
**RA: Corporation Service Company**
40 Technology Parkway South, Suite 300
Norcross, GA 30092

### DEFENDANT

---

## SUMMONS

---

### TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff(s) attorney, whose name and address is:

**MICHAEL D. TURNER**
**ATTORNEYS FOR THE PLAINTIFF**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
770-913-6229
mdturner@lawhuggins.com

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___**9TH**___ day of ___**MARCH**___, 2 0 2 0.

Richard T. Alexander, Jr.,
Clerk of State Court

BY: _____
Deputy Clerk

E-FILED IN OFFICE - NS
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**20-C-01686-S1**
**3/9/2020 4:32 PM**

*[signature]*
CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MSJ REX HOLDINGS, LLC, d/b/a SHELL FOOD MART,<br><br>    **Plaintiff,**<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br> a foreign corporation,<br><br>    **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) |

**CIVIL ACTION FILE NO.:**
  20-C-01686-S1

## COMPLAINT

**COMES NOW** Plaintiff MSJ REX HOLDINGS, LLC, d/b/a SHELL FOOD MART, by and through counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, NATIONWIDE MUTUAL INSURANCE COMPANY, and in support hereof, states as follows:

## PARTIES

1.

Plaintiff is a Georgia corporation which is the named insured on the Policy at issue, with its principal place of business in Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 40 Technology Pkwy South, Suite 300, Norcross, GA

30092 where it may be served with process through its registered agent, Corporation Service

Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad

faith denial of insurance claim, and the Court has personal jurisdiction over Defendant because

Defendant is transacting business and insuring properties in the State of Georgia, and has appointed

a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A.

§ 33-4-4.

4.

Venue is proper in this Court because Defendant is transacting business, executing policies,

and insuring properties in Gwinnett County pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has

consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its

Policy No. ACP BPRM3036811839 (the "Policy"). A true and accurate copy of the Policy is

attached hereto as Exhibit "A." The Policy insures against property damage to Plaintiff's property

located at 5969 Highway 42, Rex, GA 30273 (the "Property" or the "insured property"), and the

Policy likewise insures against loss of severe storm damage. Specifically, the Policy provides

coverage for "Commercial property including attached structures" and "Business personal

property owned or used by the insured" with a deductible of $2,500.00 per occurrence. <u>See</u> Exhibit "A".

7.

The Policy covers property repairs on a full replacement cost basis, "the whole amount of loss for property covered." <u>See</u> Exhibit "A". The Policy is an all-perils policy providing coverage for all "sudden and accidental direct physical loss to property". <u>See</u> Exhibit "A".

8.

The Policy covers various types of expenses, including mitigating expenses. <u>See</u> Exhibit "A."

<u>**STORM DAMAGE TO THE INSURED PROPERTY**</u>

9.

On, or about March 19, 2018, a severe storm caused direct physical loss of, or damage to, the Plaintiff's property. The Policy was in effect at the time of the above-referenced storm.

10.

Plaintiff promptly and timely notified Defendant of the storm damage to its property as a result of the severe storm and made a claim pursuant to the Policy. As a result, Defendant assigned Bryan Crouch ("Crouch") to investigate Plaintiff's claim for loss of damage. Crouch was authorized as Defendant's representative and agent for purposes of the storm-related claim.

11.

At all times, Plaintiff made itself and its property available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the storm.

3

12.

Defendant, through its authorized representative and agent, Crouch, performed a site inspection of Plaintiff's property.

13.

Defendant's authorized representatives and agents, Crouch, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when they undertook the handling of the disposition of the claim.

14.

Defendant, through its authorized representative and agent, Crouch, grossly underestimated the scope of damages sustained to the Plaintiff's property as a result of the severe storm event. Defendant failed to properly investigate the damages and estimated Plaintiff's total property damage to be $4,724.06. Plaintiff's deductible is $2,500.00; thus, after the deductible and depreciation, Plaintiff was due $2,180.58 for the damage to its property. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B".

15.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the amount of damage and the amount it will cost the Plaintiff in order to be placed in the same position they were in prior to the storm.

16.

Plaintiff made repeated requests for payment of the claim, including written demand sent to Defendant on December 13, 2019.  A true and correct copy of the written demand is attached hereto as Exhibit "C".  Despite this demand for **$284,568.00,** Defendant has continued to frivolously deny Plaintiff's claim without just cause when the obligation to settle the claim has become reasonably clear, under one or more portions of the insurance policy coverage.

17.

The Plaintiff's December 13, 2019, correspondence (Exhibit "C") to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to O.C.G.A. §33-4-6 guidelines.  After putting Defendant on notice of a potential lawsuit, through the formal 60-Day demand, the Defendant continued to frivolously and baselessly deny Plaintiff's claim without just cause.

18.

Defendant did not act fairly and honestly toward the Plaintiff with due regard to the Plaintiff's claim when the Defendant failed to compensate the Plaintiff for its damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiff, and with due regard for its interests.

19.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

20.

There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's property caused by the severe storm that occurred on March 19, 2018. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

21.

Plaintiff has suffered physical damage to its property in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

22.

Plaintiff adopts, re-alleges, and incorporates its allegations set forth in Paragraphs 1-21 of this Complaint as if fully set forth herein.

23.

Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

24.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

25.

Despite Plaintiff's timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to pay Plaintiff's claim under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

26.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

27.

Defendant has used the tactic of denying compensation to the Plaintiff for its covered losses that were sustained due to the severe storm. Further, Defendant has used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

28.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the insured property in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

29.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiff has been damaged and continues to suffer significant damages.

30.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

7

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH

32.

Plaintiff adopts, re-alleges, and incorporates its allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiff's claim.

34.

Defendant has not attempted in good faith to settle the Plaintiff's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for its interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue. See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. See O.C.G.A. § 33-6-34(3);

8

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.  <u>See</u> O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.  <u>See</u> O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation.  <u>See</u> O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims.  <u>See</u> O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.  <u>See</u> O.C.G.A. § 33-6-34(10).

35.

The above and foregoing actions of Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Exhibit "C") for payment according to O.C.G.A § 33-4-6.

36.

Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Plaintiff for its covered loss that was sustained due to the severe

9

storm. Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiff in an effort to misrepresent the language of the Policy.

37.

Defendant's refusal to pay Plaintiff's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

38.

Defendant's breach of the Policy it sold to the Plaintiff is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiff is entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiff's consultant and expert fees.

39.

Pursuant to O.C.G.A. § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiff within sixty (60) days of receipt of formal demand and have failed to do so. As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis – Defendant is liable for all amounts due under its respective policy plus fifty percent (50%), pursuant to O.C.G.A. § 33-4-6.

40.

Pursuant to O.C.G.A. § 33-6-34, Defendant owed Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiff's claim fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly. Because Defendant has breached these duties,

10

it is liable to Plaintiff for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

41.

Pursuant to O.C.G.A. § 33-6-34, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to pay the Plaintiff when it refused to conduct a reasonable investigation of Plaintiff's claim.  Moreover, such failure was arbitrary, capricious, and without probable cause.

42.

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."  Plaintiff is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## COUNT III: ATTORNEY'S FEES

43.

Plaintiff adopts, re-alleges, and incorporates its allegations set forth in Paragraphs 1-42 of this Complaint as if fully set forth herein.

11

44.

Defendant has acted in bad faith, and has been stubbornly and maliciously litigious and has caused Plaintiff unnecessary trouble and expense.

45.

Under the circumstances, Defendant is liable to Plaintiff for all of Plaintiff's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

**DEMAND FOR JURY TRIAL**

46.

Plaintiff requests a trial by Jury on all counts of the Complaint.

**PRAYER FOR RELIEF**

47.

**WHEREFORE**, Plaintiff request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which it is justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 9th day of March, 2 0 2 0.

RESPECTFULLY SUBMITTED,

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

# EXHIBIT A

DocuSign Envelope ID: 5C526542-DF3B-4074-92D5-CC8E581231A6



Nationwide®
is on your side

# Certification

I, Azra Efendic, as a duly authorized Nationwide associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of ACP BPRM 3036811839, MSJ Rex Holdings LLC, was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

DocuSigned by:

*Azra Efendic*

59FB9CF87CA347C...                                        7/30/2019

Signature                          Date

Azra Efendic

Print Name

CL Processing Supervisor

Title

**Nationwide®**
Is on your side

**NATIONWIDE MUTUAL INSURANCE CO**

**CHANGE OF DECLARATIONS ENDORSEMENT - PLEASE READ CAREFULLY.**

| POLICY NUMBER  ACP  BPRM 3036811839 | **PREMIER BUSINESSOWNERS POLICY** |
|---|---|

| NAMED INSURED: **MSJ REX HOLDINGS LLC - DBA** | |
| **SHELL FOOD MART** | |

| MAILING ADDRESS: **2335 SUGARLOAF CLUB DR** | |
| **DULUTH, GA   30097-7404** | |

| AGENT NAME: Falcon Insurance Inc                    10  09963 | NO CHARGE  $              .00 |
|---|---|
| AGENT ADDRESS: FOREST PARK GA    30297                          001 | |

| POLICY PERIOD:  FROM   **09-11-17**   TO   **09-11-18**   12:01 A.M. Standard Time | |
|---|---|
| EFFECTIVE DATE OF CHANGE:         **10-24-17**         12:01 A.M. Standard Time | TOTAL  PREMIUM  $              .00 |

**NOT A STATEMENT - YOUR BILLING WILL FOLLOW**

PREMIUM

✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱ MORTGAGEE OR LOSS PAYEE ✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱

ADDED    ADDITIONAL INTEREST
              FIDELITY BANK ISAOA ATIMA
              PO BOX 105075, ATLANTA, GA, 30348-5075


              LOCATION 001  BUILDING 001  INTEREST NO: 001 - MORTGAGEE

F98014 (01-01) 02

DIRECT BILL    L4WS  17297                    INSURED COPY                          921181363    35    00505

IN 73 77 08 06

★ ★ ★ ★ ★ ★      IMPORTANT INSURANCE INFORMATION      ★ ★ ★ ★ ★ ★

Please read this Notice carefully. No coverage is provided by this notice nor can it be construed to replace any provision of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

# INFORMATION FOR INSUREDS WHO HAVE TENANTS

## ANTI-SUBROGATION RULE /
## IMPLIED CO-INSURED DOCTRINE

Subrogation, or the ability to recover damages from a responsible party, plays an important role in the claims settlement process when a loss occurs. The subrogation clause in your insurance contract permits your insurer to pursue recovery against those parties responsible for losses under your policy.

The "Anti-Subrogation Rule/Implied Co-Insured Doctrine" may hinder subrogation on your policy by preventing landlords and their insurance companies from recovering damages caused by tenants. These damages may include the property deductible you pay, uninsured or partially covered losses, or losses that occur as a result of tenants' negligence.

If this doctrine is applied where your buildings are located, you may be unable to seek repayment from your tenants if they negligently cause a fire in your building. To prevent this from occurring, additional provisions may be needed in your lease agreements to clarify who is responsible for damages when property damage or injury is caused by a tenant's negligence.

This information is not intended to be legal advice and is provided for informational purposes only. We recommend that you contact an attorney for more guidance on the "Anti-Subrogation Rule/Implied Co-Insured Doctrine" and how it affects the lease agreement between you and your tenants.

ACP BPRM3036811839                              INSURED COPY                              35    00127

IN 74 04 01 07

# IMPORTANT FLOOD INSURANCE NOTICE

**Thank you for the opportunity to provide your important insurance protection.  As your insurance provider, we like to keep you informed of important issues that can potentially impact your property assets.  This letter is to remind you of the importance of considering flood insurance and the importance of reviewing your policies on a regular basis.**

**Your Commercial Property (Premier Businessowners, and/or Commercial Property) and Farmowners' policy does not cover damage from floods to any property resulting directly or indirectly from "water."  Excluded "water" losses include, but are not limited to those caused by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not. These types of loss or damage caused by "Water" are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. You will need to read your policy for all of the details about excluded water losses.  This is just a summary of the excluded water losses to highlight some important flood-related issues.**

**In most communities, you can obtain flood insurance through your agent that is backed by the federal government's National Flood Insurance Program.  In those qualifying communities, you can obtain flood insurance protection for your property regardless of your flood zone or flood risk.**

**Your agent can assist you in 1) determining if your community participates in the National Flood Insurance Program, 2)  assessing your flood risk, and 3) understanding flood policy availability. To learn more about flood insurance and your risk of flooding access the National Flood Insurance Program's consumer website at www.FloodSmart.gov.**

**As you consider the risk of flooding in your area and consider your options for obtaining valuable protection, consider that:**

- **All property is in a flood zone, regardless of whether an area has been defined as high risk or low risk.**
- **Nearly 25% of all flood claims are for properties located in lower-risk flood areas or locations where flooding is not expected.**
- **Floods can happen anywhere, at any time, causing anguish, destruction, and financial damage.**
- **Changing weather patterns, as well as residential and business development, may increase your chance of experiencing a flood.**
- **Flooding can occur as a result of clogged, overloaded, or inadequate storm drains.  You don't have to live near a body of water to be flooded.**
- **Federal disaster assistance is often a loan and must be repaid with interest.**
- **Your commercial property and/or farmowner policies exclude loss by flooding.**

**Ask your agent about obtaining flood insurance for commercial property today. Thank you for choosing us to meet your insurance needs. We value your business.**

IN 78 09 11 15

★★★★★★★   IMPORTANT INSURANCE INFORMATION   ★★★★★★★

Please read this Notice carefully.  No coverage is provided by this notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

# DATA BREACH & IDENTITY RECOVERY SERVICES

**Data Breach Services Information:**

Through a partnership with Hartford Steam Boiler, you have access to a data breach risk management portal called the eRiskHub®.  The portal is designed to help you understand data information exposures, help you plan and be prepared for a data breach, and establish a response plan to manage the costs and minimize the effects of a data breach.

Key features of the portal include:
- Incident Response Plan Roadmap – suggested steps your business can take following data breach incident.  Having an incident response plan prepared in advance of a breach can be useful for defense of potential litigation.
- Online Training Modules – ready-to-use training for your business on privacy best practices and Red Flag Rules.
- Risk Management Tools- assist your business in managing data breach exposures including self-assessments and state breach notification laws.
- eRisk Resources – a directory to quickly find external resources on pre and post-breach disciplines.
- News Center – cyber risk stories, security and compliance blogs, security news, risk management events, and helpful industry links.
- Learning Center – best practices and white papers written by leading authorities.

To access the eRiskHub®portal:
- Enter https://www.eriskhub.com/nationwide in your browser.
- Complete the information, including your name and company. Your User ID and Password are case-sensitive.
- Enter your assigned access code: **12116-73**.
- Enter the challenge word on the screen, and click "Submit" and follow the instructions to complete your profile setup.
- You can now login to the portal.

You also have access to a help-line to answer breach related questions.  Insureds having questions pertaining to how to prepare for a breach, help in identifying a breach, or other questions pertaining to breach related best practices can call our breach preparedness help-line.  Experienced professionals are able to provide insights to help insureds understand the complicated environment pertaining to breaches of personal information.  The breach preparedness help-line is 877-800-5028.

**IN 78 09 11 15**                                                                **Page 1 of 2**

**IN 78 09 11 15**

In addition, you have the ability to purchase Data Compromise Insurance coverage and CyberOne Insurance coverage.

The Data Compromise coverage covers the costs incurred by an insured to respond to a data breach, including expenses related to forensic information technology review, legal review, notification to affected individuals, services to affected individuals, public relations services. Insureds will also have the ability to include Data Compromise Defense and Liability coverage which covers the liability from a suit brought by an individual affected by the data breach.

CyberOne coverage protects businesses against damage to electronic data and computer systems from a virus or other computer attack. It also protects a business's liability to third parties that may have suffered damage due to security weaknesses in the business's computer system.

**Identity Recovery Services Information:**

Through a partnership Hartford Steam Boiler, you will have access to a Toll-Free Identity Recovery Help Line designed to provide education about identity theft and identity theft risks. The toll-free Help Line is staffed by experienced identity theft counsellors who can answer questions and provide useful information and resources to identity theft victims. The Identity Recovery Help Line number is 877-800-5028.

In addition, you have the ability to buy Identity Recovery insurance coverage as an included element of Data Compromise coverage or separately, on its own. The Identity Recovery coverage insures against the theft of identities of the insured's key owners, officers, and resident family members.  The coverage provides the services of an identity theft case manager and pays for various out-of-pocket expenses due to a covered identity theft, including:

- Legal fees for answer of civil judgments and defense of criminal charges
- Phone, postage, shipping fees
- Notary and filing fees
- Credit bureau reports
- Lost Wages and Child or Elder Care
- Mental Health Counseling costs (Not Available in NY)
- Miscellaneous Expense coverage

**Nationwide®**
is on your side

NATIONWIDE MUTUAL INSURANCE CO
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215-2220

10   09963
RENEWAL

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

### COMMON DECLARATIONS

Policy Number:  ACP   BPRM  3036811839

Named Insured:  **MSJ REX HOLDINGS LLC - DBA**
**SHELL FOOD MART**
Mailing Address:  **2335 SUGARLOAF CLUB DR**
**DULUTH, GA   30097-7404**
Agency:  **Falcon Insurance Inc**
Address:  **FOREST PARK GA   30297**
Agency Phone Number:  **(404)361-2054**

Policy Period:  Effective From **09-11-17**      To **09-11-18**
12:01 AM Standard Time at your principal place of business.

Form of your business entity:  **LIMITED LIABILITY CO**

Description of your business:  **STRIP MALL SHOPPING CENTER**

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:**  If we offer to continue your coverage and you or your representative do not accept,
this policy will automatically terminate on the expiration date of the current policy period stated above.  Failure to
pay the required premium when due shall mean that you have not accepted our offer to continue your coverage.
This policy will terminate sooner if any portion of the current policy period premium is not paid when due.

**RENEWAL POLICY NOTICE:**  In an effort to keep insurance premiums as low as possible, we have streamlined
your renewal policy by not including printed copies of policy forms or endorsements that have not changed from
your expiring policies, unless they include variable information that is unique to you.  Refer to your prior policies for
printed copies of these forms.  If you have a need for any form, they are available by request from your agent.

TOTAL POLICY PREMIUM $      **4,457.00**

| Previous Policy Number | | | |
|---|---|---|---|
| ACP   BPRM 3026811839 | ENTRY DATE | 06-27-17 | Countersignature          Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations,
Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

**PB 81 00 (01-01)**

Page 1 of 2

DIRECT BILL   LJXZ            MAC        INSURED COPY            UID    Z1    REPRINT   35   00131

# PREMIER BUSINESSOWNERS POLICY

PREMIER RETAIL

## SCHEDULE OF NAMED INSUREDS

| Policy Number: ACP   BPRM  3036811839 | From 09-11-17 | Policy Period:<br>To 09-11-18 |
|---|---|---|

Named Insured:

**MSJ REX HOLDINGS LLC - DBA
SHELL FOOD MART**

**PB 81 00 (01-01)** 

**Page 2 of 2**

35   00132

# NATIONWIDE MUTUAL INSURANCE COMPANY
# MUTUAL COMPANY CONDITIONS ENDORSEMENT

**POLICYHOLDER MEMBERSHIP IN THE COMPANY**
(Applicable Only to Policies Issued by Nationwide Mutual Insurance Company in States other than the State of Texas)

Because this policy is issued by Nationwide Mutual Insurance Company (the "Company"), the first named insured listed on the declarations page ("named insured") is a member of the Company issuing the policy while this or any other policy issued by the Company is in force. While a member, the named insured is entitled to one vote only – regardless of the number of policies issued to the named insured – either in person or by proxy at meetings of members of the Company.

The annual meeting of members of the Company will be held each year at the Home Office of the Company in Columbus, Ohio, at 10 a.m. on the first Thursday of April. If the Board of Directors of Nationwide Mutual Insurance Company should elect to change the time or place of that meeting, the Company will mail notice of the change to the member's last known address. The Company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the named insured is not subject to any assessment beyond the premiums required for each policy term.

**POLICYHOLDER DIVIDEND PROVISIONS**
The named insured is entitled to any Dividends which are declared by the Board of Directors of the Company in accordance with law and which are applicable to coverages provided in this policy.

**POLICYHOLDER MEMBERSHIP IN THE COMPANY IN TEXAS**
(Applicable Only to Policies Issued by Nationwide Mutual Insurance Company in the State of Texas)

**1.  MUTUALS – MEMBERSHIP AND VOTING NOTICE.** The named insured is notified that, by virtue of this policy, the named insured is a member of the Nationwide Mutual Insurance Company of Columbus, Ohio, (the "Company") and is entitled, as is lawfully provided in the charter, constitution, and by-laws to vote either in person or by proxy in any or all meetings of said Company. Each member is entitled to only one vote regardless of the number of policies owned. The annual meetings of the members of the Company are held in the Home Office, at Columbus, Ohio, on the first Thursday of April, in each year, at 10:00 o'clock a.m.

**2.  MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY.** No Contingent Liability: This policy is non-assessable. The named insured is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

**POLICYHOLDER DIVIDEND PROVISIONS**
The named insured shall be entitled to participate in a distribution of the surplus of the Company, as determined by its Board of Directors from time to time, after approval in accordance with the provision of the Texas Insurance Code, of 1951, as amended.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company has caused this policy to be signed by its President and Secretary, and countersigned by a duly authorized representative of the Company.

_Denise Snyder_                          _Mark A Berven_

Secretary                                 President

**SP 00 01 09 16**                                                    **Page 1 of 1**

# PREMIER BUSINESSOWNERS POLICY
### PREMIER RETAIL
### PROPERTY DECLARATIONS

| | |
|---|---|
| Policy Number:   **ACP BPRM3036811839** | Policy Period:<br>From **09-11-17** To **09-11-18** |

Description of Premises Number: **001**   Building Number: **001**   Construction: **MASONRY NON-COMBUST**
Premises Address **5969 HIGHWAY 42**                                                          **REX**          **GA**               **30273-1075**
Premises ID
Occupancy **OL**   Classification: **STRIP MALLS - LESSORS RISK ONLY (UP TO 50,000 SQUARE FEET)**
                                **- NO RESTAURANT OCCUPANCY**
                Described as: **STRIP SHOPPING CENTER**

---

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a **$ 2,500** Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building - Replacement cost | **$1,040,600** |
| Business Personal Property - | **NOT PROVIDED** |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | **INCLUDED** |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | **INCLUDED** |
| Equipment Breakdown | **INCLUDED** |
| Automatic Increase in Insurance - Building | **1%** |
| Automatic Increase in Insurance - Business Personal Property | **NOT PROVIDED** |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000  policy aggregate) | |
| | **$5,000** |
| Appurtenant Structures - 10% of Building Limit of Insurance - maximum $50,000 any one structure | **INCLUDED** |
| Increased Cost of Construction | **$25,000** |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $25,000 | | **$25,000** |
| Valuable Papers and Records (At the Described Premises) | $25,000 | | **$25,000** |
| Forgery and Alteration | $10,000 | | **$10,000** |
| Money and Securities - Inside the Premises | $10,000 | | **$10,000** |
| Outside the Premises (Limited) | $10,000 | | **$10,000** |
| Outdoor Signs | $2,500 | | **$2,500** |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | | **$10,000** |
| Business Personal Property Away From Premises | $15,000 | | **$15,000** |
| Business Personal Property Away From Premises - Transit | $15,000 | | **$15,000** |
| Electronic Data | $10,000 | | **$10,000** |
| Interruption of Computer Operations | $10,000 | | **$10,000** |
| Building Property of Others | $10,000 | | **$10,000** |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | **NOT PROVIDED** |
| Ordinance or Law - 1 - Loss to Undamaged Portion | **NOT PROVIDED** |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | **NOT PROVIDED** |
| Ordinance or Law Broadened | **NOT PROVIDED** |

**PROTECTIVE SAFEGUARDS**
This premise has Protective Safeguards identified by symbols below.  Insurance for Fire or Burglary and Robbery
at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired.
See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS:  **NOT APPLICABLE**

---

**PB 81 01 (04-11)**          **NATIONWIDE MUTUAL INSURANCE COMPANY**                    Page 1 of 2

DIRECT BILL   LJXZ          MAC       INSURED COPY              UID    Z1    REPRINT   35  00134

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Period:

Policy Number:   **ACP BPRM3036811839**                                   From **09-11-17** To **09-11-18**

| Additional Interest: Interest: | Interest Number: | Loan Number: |
|---|---|---|
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |
| Additional Interest: Interest: | Interest Number: | Loan Number: |

**PB 81 01 (04-11)**                                                                                     **Page 2 of 2**

DIRECT BILL    LJXZ              MAC        INSURED COPY              UID     Z1              35   00135

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**
**PROPERTY DECLARATIONS**

Policy Number:   **ACP BPRM3036811839**

Policy Period:
From **09-11-17** To **09-11-18**

| | | | |
|---|---|---|---|
| Description of Premises Number: **001** | Building Number: **002** | Construction: | **NON-COMBUSTIBLE** |
| Premises Address **5969 HIGHWAY 42** | | **REX** | **GA**            30273-1075 |
| Premises ID | | | |

Occupancy   **OL**   Classification: **CONVENIENCE STORES - BEER & WINE LESS THAN 25% OF SALES - WITH GAS PUMPS - NO COOKING**

Described as: **PUMPS AND CANOPY**

---

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

---

The Property Coverage provided at this premises is subject to a **$ 2,500** Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building - Replacement cost | **$208,200** |
| Business Personal Property - | **NOT PROVIDED** |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | **INCLUDED** |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | **INCLUDED** |
| Equipment Breakdown | **INCLUDED** |
| Automatic Increase in Insurance - Building | **1%** |
| Automatic Increase in Insurance - Business Personal Property | **NOT PROVIDED** |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000 policy aggregate) | **$5,000** |
| Appurtenant Structures - 10% of Building Limit of Insurance - maximum $50,000 any one structure | **INCLUDED** |
| Increased Cost of Construction | **$25,000** |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $25,000 | | **$25,000** |
| Valuable Papers and Records (At the Described Premises) | $25,000 | | **$25,000** |
| Forgery and Alteration | $10,000 | | **$10,000** |
| Money and Securities - Inside the Premises | $10,000 | | **$10,000** |
|                            Outside the Premises (Limited) | $10,000 | | **$10,000** |
| Outdoor Signs | $2,500 | | **$2,500** |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | | **$10,000** |
| Business Personal Property Away From Premises | $15,000 | | **$15,000** |
| Business Personal Property Away From Premises - Transit | $15,000 | | **$15,000** |
| Electronic Data | $10,000 | | **$10,000** |
| Interruption of Computer Operations | $10,000 | | **$10,000** |
| Building Property of Others | $10,000 | | **$10,000** |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | **NOT PROVIDED** |
| Ordinance or Law - 1 - Loss to Undamaged Portion | **NOT PROVIDED** |
|                            2 - Demolition Cost and Broadened Increased Cost of Construction | **NOT PROVIDED** |
|                            Ordinance or Law Broadened | **NOT PROVIDED** |

**PROTECTIVE SAFEGUARDS**
This premise has Protective Safeguards identified by symbols below.  Insurance for Fire or Burglary and Robbery at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired. See **PB 04 30** for a description of each symbol. APPLICABLE SYMBOLS:  **NOT APPLICABLE**

---

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Number:   **ACP BPRM3036811839**

Policy Period:
From  **09-11-17** To  **09-11-18**

| | | |
|---|---|---|
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |
| Additional Interest:<br>Interest: | Interest Number: | Loan Number: |

# PREMIER BUSINESSOWNERS POLICY
### PREMIER RETAIL
## LIABILITY DECLARATIONS

| | |
|---|---|
| Policy Number:   **ACP  BPRM 3036811839** | Policy Period:<br>From **09-11-17**  To **09-11-18** |

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit of Insurance | Per Occurrence | **$1,000,000** |
| Medical Payments Coverage Sub Limit | Per Person | **$5,000** |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | **$300,000** |
| Personal and Advertising Injury | Per Person Or Organization | **$1,000,000** |
| Products – Completed Operations Aggregate | All Occurrences | **$2,000,000** |
| General Aggregate | All Occurrences | **$2,000,000** |
| (Other than Products – Completed Operations) | | |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

Co-Owners of Insured Premises
Controlling Interest
Grantor of Franchise or License
Lessors of Leased Equipment
Managers or Lessors of Leased Premises
Mortgagee, Assignee or Receiver
Owners or Other Interest from Whom Land has been Leased
State or Political Subdivisions - Permits Relating to Premises

## PROPERTY DAMAGE DEDUCTIBLE
NONE

## OPTIONAL COVERAGES
NONE PROVIDED

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

## FORMS AND ENDORSEMENTS SUMMARY

Policy Number:  ACP  BPRM  3036811839

Policy Period:
From **09-11-17**  To **09-11-18**

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 1114 | PREMIER BUSINESSOWNERS |
| PB0006 | 1114 | PREMIER BUSINESSOWNERS LIABILITY COVERAG |
| PB0009 | 1114 | PREMIER BUSINESSOWNERS COMMON POLICY CON |
| PB0412 | 0101 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES |
| PB0588 | 0411 | GEORGIA - LIMITED FUNGI OR BACTERIA COVE |
| PB2998 | 0908 | EXCLUSION - VIOLATION OF CONSUMER PROTEC |
| PB5910 | 1213 | GEORGIA CHANGES - DIMINISHED VALUE OR ST |
| PB6307 | 0307 | POLLUTION LIABILITY AMENDMENT - CUSTOMER FUELING |
| PB9010 | 0517 | GEORGIA AMENDATORY ENDROSEMENT |
| PB1504 | 1114 | ACCESS OR DISCLOSURE OF CONFIDENTIAL OR |
| PB0523 | 0715 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |

### IMPORTANT NOTICES

| | | |
|---|---|---|
| IN7377 | 0806 | INFORMATION FOR INSUREDS WHO HAVE TENANTS ANTI-SUBROGATION R |
| IN7404 | 0107 | IMPORTANT FLOOD INSURANCE NOTICE |
| IN7809 | 1115 | DATA BREACH & IDENTITY RECOVERY SERVICES |

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

## TABLE OF CONTENTS

A. COVERAGES ............................................................................................................................... 2
   1. COVERED PROPERTY ..................................................................................................... 2
   2. PROPERTY NOT COVERED............................................................................................. 3
   3. COVERED CAUSES OF LOSS......................................................................................... 3
   4. LIMITATIONS...................................................................................................................... 3
   5. ADDITIONAL COVERAGES............................................................................................... 4
      a. Debris Removal........................................................................................................... 4
      b. Preservation Of Property............................................................................................ 5
      c. Fire Department Service Charge................................................................................. 5
      d. Fire Extinguisher Recharge........................................................................................ 5
      e. Collapse...................................................................................................................... 5
      f. Water Damage, Other Liquids, Powder Or Molten Material Damage......................... 6
      g. Business Income........................................................................................................ 6
      h. Extra Expense............................................................................................................ 7
      i. Pollutant Clean Up And Removal................................................................................ 8
      j. Civil Authority.............................................................................................................. 8
      k. Money Orders And Counterfeit Money........................................................................ 8
      l. Forgery And Alteration................................................................................................ 9
      m. Increased Cost Of Construction – Damaged Property................................................ 9
      n. Equipment Breakdown............................................................................................... 10
      o. Arson Reward for Conviction.................................................................................... 12
      p. Money And Securities............................................................................................... 12
      q. Appurtenant Structures............................................................................................ 13
      r. Back Up Of Sewer Or Drain Water Damage............................................................ 13
      s. Dependent Properties – Business Income................................................................ 14
      t. Limited Coverage for Fungi, Wet Rot Or Dry Rot..................................................... 14
      u. Building Property of Others....................................................................................... 15
      v. Unauthorized Business Card Use............................................................................. 16
      w. Computer Fraud And Funds Transfer Fraud............................................................ 16
   6. COVERAGE EXTENSIONS............................................................................................. 16
      a. Newly Acquired or Constructed Property.................................................................. 16
      b. Newly Acquired Property - Business Income............................................................ 17
      c. Personal Property Off-premises................................................................................ 17
      d. Outdoor Trees, Shrubs, Plants, and Lawns............................................................. 18
      e. Outdoor Signs.......................................................................................................... 18
      f. Personal Effects....................................................................................................... 18
      g. Valuable Papers And Records.................................................................................. 18
      h. Accounts Receivable................................................................................................ 19
      i. Salespersons Samples.............................................................................................. 19
      j. Business Income and Extra Expense –Increased Period of Restoration Due to Ordinance or Law . 19
      k. Removal Permit........................................................................................................ 19
      l. Electronic Data......................................................................................................... 20
      m. Interruption of Computer Operations....................................................................... 20
B. EXCLUSIONS .......................................................................................................................... 21
C. LIMITS OF INSURANCE ......................................................................................................... 26
D. DEDUCTIBLES ........................................................................................................................ 27
E. PROPERTY LOSS CONDITIONS ........................................................................................... 28
F. PROPERTY GENERAL CONDITIONS .................................................................................... 32
G. OPTIONAL COVERAGES ....................................................................................................... 33
   1. Employee Dishonesty Optional Coverage....................................................................... 33
   2. Ordinance or Law Optional Coverages............................................................................ 35
   3. Optional Amendment of Coverage - Exclude Theft ......................................................... 37
H. PROPERTY DEFINITIONS ...................................................................................................... 38

PB 00 02 11 14

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

## A. COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. COVERED PROPERTY

Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2, PROPERTY NOT COVERED.

a. **Buildings**, meaning the described buildings and structures at the described premises, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery;

(b) Equipment; and

(c) Tanks, including pumps;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings;

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

(e) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast and towers;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures; and

(7) Garages, storage buildings, spas, swimming pools, fences, retaining walls or other appurtenant structures usual to your business, but only if:

(a) Coverage is not provided for such structures under the Appurtenant Structures Additional Coverage; and

(b) Such structures are then described in the Declarations.

b. **Business Personal Property** located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the building or structures or within 1,000 feet of the premises described in the Declarations, whichever distance is greater, consisting of the following:

(1) Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment and "stock";

(2) Personal property of others that is in your care, custody or control, except as otherwise provided in Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS;

(3) Tenant improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

**Page 2 of 42**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **PB 00 02 11 14**

ACP BPRM3036811839                              INSURED COPY                                  35    00141

      (b) You acquired or made at your expense but cannot legally remove; and

    (4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under paragraph (2) personal property of others above.

    (5) Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control and you must be contractually obligated to repair or replace it. We will also pay for necessary repair or replacement of encasing frames, lettering or ornamentation that is part of the exterior glass.

    Regardless of the amount of the Deductible, the most we will deduct from any loss or damage to exterior building glass in any one occurrence is listed in DEDUCTIBLES D.2.

**2. PROPERTY NOT COVERED**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in:

    (1) Money and Securities Additional Coverage;

    (2) Computer Fraud And Funds Transfer Fraud Additional Coverage; or

    (3) Employee Dishonesty under Section G. OPTIONAL COVERAGES;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water (including water that is natural, metered water that is purchased from a utility company or other supplier, water that is located within a swimming pool, and/or bulk containerized water which is utilized for a fire suppression system. This does not include containerized water that is stock), growing crops or lawns (other than lawns which are part of a vegetated roof);

e. Outdoor signs (other than signs attached to buildings), trees, shrubs, plants or lawns (other than "stock" of trees, shrubs or plants and trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

    (1) Outdoor Signs Coverage Extension; or

    (2) Outdoor Trees, Shrubs, Plants and Lawns Coverage Extension.

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Gasoline or diesel fuel contained in above ground or underground storage tanks;

h. Property that is covered under another coverage form of this or any other policy issued to the Named Insured listed on this policy in which it is more specifically described, except for the excess of the amount due (whether you can collect it or not) from that other insurance;

i. Grain, hay, straw or other crops while in the open;

j. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

k. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

l. "Electronic data", except as provided in the Electronic Data or Equipment Breakdown Additional Coverages. This paragraph l. does not apply to your "stock" of prepackaged software.

**3. COVERED CAUSES OF LOSS**

This Coverage Form insures against direct physical loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;

b. Limited in paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

**4. LIMITATIONS**

a. We will not pay for loss of or damage to:

    (1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

 INSURED COPY

PB 00 02 11 14

flues or passages through with the gases of combustion pass.

This limitation does not apply to loss or damage provided under the Equipment Breakdown Additional Coverage.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

This limitation does not apply to loss or damage provided under the Equipment Breakdown Additional Coverage.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to Money and Securities Additional Coverage.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

This limitation does not apply to loss or damage provided under the Unauthorized Business Card Use or Computer Fraud.

(5) Fences, spas, outdoor swimming pools and related equipment, retaining walls, pavements, bulkheads, pillars, wharves or docks caused by freezing or thawing, impact of watercraft, or by the pressure or weight of snow, sleet, ice or water whether driven by wind or not.

(6) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Fragile articles such as glassware, statuary, marbles, chinaware and

porcelains, if broken. This limitation does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **ADDITIONAL COVERAGES**

a. **Debris Removal**

(1) We will pay your expense to remove debris of Covered Property and debris from the property of others when such debris is caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) The most we will pay under this Debris Removal Additional Coverage is 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

This Debris Removal Additional Coverage will not increase the Limits of Insurance provided by this policy.

HOWEVER, this limitation does not apply to any additional debris removal limit provided in paragraph (4) below.

(3) This Debris Removal Additional Coverage does not apply to costs to:

(a) Remove deposits of mud or earth from the grounds of the described premises;

(b) Extract "pollutants" from land or water;

ACP BPRM3036811839                                INSURED COPY                                     35    00143

  (c) Remove, restore or replace polluted land or water; or

  (d) Extract "pollutants" from Covered Property.

 (4) If:

  (a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

  (b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

 we will pay up to an additional $25,000 for each location in any one occurrence under this Debris Removal Additional Coverage.

**b. Preservation Of Property**

 (1) If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

  (a) While it is being moved or while temporarily stored at another premises; and

  (b) Only if the loss or damage occurs within 45 days after the property is first moved.

 (2) This Preservation of Property Additional Coverage will not increase the Limits of Insurance provided by this policy.

**c. Fire Department Service Charge**

 (1) When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 for your liability for fire department service charges:

  (a) Assumed by contract or agreement prior to loss; or

  (b) Required by local ordinance.

 (2) The limit for this Fire Department Service Charge Additional Coverage is in addition to the Limits of Insurance.

 (3) No deductible applies to this Fire Department Service Charge Additional Coverage.

**d. Fire Extinguisher Recharge**

 (1) We will pay the expense you incur to recharge portable fire extinguishers when used to combat a covered fire.

 (2) This Fire Extinguisher Recharge Additional Coverage is not subject to the Limits of Insurance.

 (3) No deductible applies to this Fire Extinguisher Recharge Additional Coverage.

**e. Collapse**

The coverage provided under this Collapse Additional Coverage applies only to an abrupt collapse as described and limited in paragraphs e.(1) through e.(7).

 (1) For the purpose of this Collapse Additional Coverage abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

 (2) We will pay for direct physical loss of or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

  (a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

  (b) Insect or vermin damage that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

  (c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

  (d) Use of defective materials or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   (i) A cause of loss listed in paragraph (2)(a) or (2)(b);

   (ii) One or more of the "specified causes of loss";

   (iii) Breakage of building glass;

   (iv) Weight of people or personal property; or

PB 00 02 11 14

       (v) Weight of rain, snow, sleet or ice, that collects on a roof.

  (3) This Collapse Additional Coverage does not apply to:

    (a) A building or any part of a building that is in danger of falling down or caving in;

    (b) A part of a building that is standing, even if it has separated from another part of the building; or

    (c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

  (4) With respect to the following property:

    (a) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast or towers;

    (b) Awnings, gutters and downspouts;

    (c) Yard fixtures;

    (d) Outdoor swimming pools;

    (e) Fences;

    (f) Bulkheads, pilings, piers, wharves and docks;

    (g) Beach or diving platforms or appurtenances;

    (h) Retaining walls; and

    (i) Walks, roadways and other paved surfaces;

  if an abrupt collapse is caused by a cause of loss listed in (2)(a) through (2)(d) above, we will pay for loss or damage to that property in (a) through (i) above only if such loss or damage is a direct result of abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

  (5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building or any part of a building, we will pay for loss of or damage to Covered Property caused by such collapse of personal property only if:

    (a) The collapse of personal property was caused by a Cause of Loss listed in (2)(a) through (2)(d) above;

    (b) The personal property which collapses is inside a building; and

    (c) The property which collapses is not of a kind listed in paragraph (4), regardless of whether that kind of property is considered to be personal property or real property.

  The coverage stated in this paragraph (5) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by collapse.

  (6) This Collapse Additional Coverage does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

  (7) This Collapse Additional Coverage will not increase the Limits of Insurance provided in this policy.

**f. Water Damage, Other Liquids, Powder Or Molten Material Damage**

  (1) If a covered loss to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

  HOWEVER, we will not pay for a loss caused by or resulting from water or other liquid, powder or molten material if the system or appliance in which the water or other substance escapes from is located off of the described premises.

  (2) We will not pay the cost to repair any defect that caused the loss or damage except as provided in Equipment Breakdown Additional Coverage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

    (a) Results in discharge of any substance from an automatic fire protection system; or

    (b) Is directly caused by freezing.

  (3) This Water Damage Additional Coverage will not increase the Limits of Insurance provided in this policy.

**g. Business Income**

  (1) **Business Income with Ordinary Payroll Limitation**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PB 00 02 11 14

ACP BPRM3036811839

INSURED COPY

35   00145

(a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(b) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(c) We will only pay for loss of "business income" that you sustain during the "period of restoration" and that occurs within the number of consecutive months shown in the Declarations for Business Income – Actual Loss Sustained after the date of direct physical loss or damage. We will only pay for "ordinary payroll expenses" for the number of days shown in the Declarations for Ordinary Payroll Limit following the date of direct physical loss or damage.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a "business income" loss payable under this policy, we will pay for the actual loss of "business income" you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or

replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the "business income" amount that would have existed if no direct physical loss or damage had occurred; or

ii. Sixty (60) consecutive days after the date determined in (2)(a)(i) above, unless a greater number of days is shown for Extended Business Income Increased Period of Indemnity in the Declarations at that described premises.

HOWEVER, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of a "business income" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) This Business Income Additional Coverage is not subject to the Limits of Insurance.

h. **Extra Expense**

(1) We will pay necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PB 00 02 11 14

which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(3) We will only pay for "extra expense" that occurs within the number of consecutive months shown in the Declarations for Extra Expense after the date of direct physical loss or damage.

(4) This Extra Expense Additional Coverage is not subject to the Limits of Insurance.

i. **Pollutant Clean Up And Removal**

(1) We will pay your expense to extract "pollutants" from land, water or Covered Property at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) This Pollutant Clean Up And Removal Additional Coverage does not apply to:

(a) Costs to test for, monitor or assess the existence, concentration or effects of "pollutants"; or

(b) Any penalties or assessments that may be charged against you due to any statute, regulation or ordinance.

But we will pay for testing which is performed in the course of extracting the "pollutants" from land and water.

(3) The most we will pay for each location under this Pollutant Clean Up And Removal Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

(4) The limit for this Pollutant Clean Up And Removal Additional Coverage is in addition to the Limits of Insurance.

j. **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "business income" will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to 30 days after coverage begins.

Civil Authority coverage for necessary "extra expense" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) 30 days after the time of that action; or

(2) When your Civil Authority coverage for "business income" ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

k. **Money Orders And Counterfeit Money**

(1) We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(a) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**Page 8 of 42**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **PB 00 02 11 14**

ACP BPRM3036811839      INSURED COPY      35      00147

(b) "Counterfeit money" that is acquired during the regular course of business.

(2) The most we will pay for any loss under this Money Orders And Counterfeit Money Additional Coverage is $5,000.

(3) The limit for this Money Orders And Counterfeit Money Additional Coverage is in addition to the Limits of Insurance.

l. **Forgery And Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000, unless a higher Limit of Insurance is shown in the Declarations.

(5) All losses:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(6) The limit for this Forgery And Alteration Additional Coverage is in addition to the Limits of Insurance.

m. **Increased Cost Of Construction – Damaged Property**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (8) of this Increased Cost Of Construction – Damaged Property Additional Coverage.

(3) The ordinance or law referred to in paragraph (2) of this Increased Cost Of Construction – Damaged Property Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Increased Cost Of Construction – Damaged Property Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Increased Cost Of Construction – Damaged Property Additional Coverage, we will not pay for:

(a) The enforcement of, or compliance with, any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

(b) Any costs associated with the enforcement of, or compliance with, an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

PB 00 02 11 14

(6) The most we will pay under this Increased Cost Of Construction – Damaged Property Additional Coverage, for each described building insured under this Coverage Form, is $25,000.

The limit for this Increased Cost Of Construction – Damaged Property Additional Coverage is in addition to the Limits of Insurance.

(7) With respect to this Increased Cost Of Construction – Damaged Property Additional Coverage:

(a) We will not pay any costs:

(i) Until the property is actually repaired or replaced, at the same described premises or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same described premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same described premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises for a building of like, kind and quality and of the same size and use.

(8) This Increased Cost Of Construction – Damaged Property Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Increased Cost Of Construction – Damaged Property Additional Coverage.

n. **Equipment Breakdown**

(1) We will pay for direct physical loss of or damage to Covered Property caused by or resulting from an "accident" to "covered equipment".

If an initial "accident" causes other "accidents", all will be considered one "accident". All "accidents" that are the result of the same event will be considered one "accident".

(2) If a dollar deductible is shown in the declarations for this Equipment Breakdown Additional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no dollar deductible is shown for Equipment Breakdown Additional Coverage, the Property Deductible shown in the Declarations applies.

(3) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

(a) **Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

(i) Make temporary repairs; and

(ii) Expedite permanent repairs or replacement.

(b) **Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in (3)(c)(ii) below.

Additional costs mean those beyond what would have been required had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of "business income" you sustain and necessary "extra expense" you incur is $50,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839

INSURED COPY

(c) **Perishable Goods**

    (i)  We will pay for physical damage to "perishable goods" due to spoilage.

    (ii)  We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

    (iii)  We will also pay necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    (iv)  If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS.

The most we will pay for loss, damage or expenses under this coverage is $50,000.

(d) **Service Interruption**

    (i)  The insurance provided under the Business Income Additional Coverage, the Extra Expense Additional Coverage and for (c) Perishable Goods in this Equipment Breakdown Additional Coverage, is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water or steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    (ii)  Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident".

    (iii)  The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Perishable Goods.

(e) **Electronic Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data".

The most we will pay for loss or expense under this coverage, including actual loss of "business income" you sustain and necessary "extra expense" you incur, is $50,000.

(f) **Environmental, Safety and Efficiency Improvements**

The following provision does not apply to property insured on an "actual cash value" basis.

If "covered equipment" requires replacement due to loss or damage caused by or resulting from an "accident", we will pay your additional cost to replace with equipment that is better for the environment, more efficient or safer than the equipment being replaced.

HOWEVER, we will not pay more under this additional coverage than 125% of what the cost would have been to repair or replace with like kind and quality.

This provision does not increase any of the applicable limits.

(4) **Additional Exclusions**

(a) We will not pay under this Equipment Breakdown Additional Coverage for loss, damage or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839
INSURED COPY

**PB 00 02 11 14**

expense caused by or resulting from:

(i) Any defect, programming error, programming limitation, "computer" virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within "electronic data". But if an "accident" results, we will pay for the resulting loss, damage or expense; or

(ii) Any of the following tests:

  i. A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

  ii. An electrical insulation breakdown test of any type of electrical equipment.

(b) With respect to (d) Service Interruption coverage, we will not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood; or earth movement.

(c) Exclusion B.1.h. Fungi, Wet Rot Or Dry Rot does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under (c) Perishable Goods coverage.

(d) We will not pay under this Equipment Breakdown Additional Coverage for any loss or damage to animals.

(5) **Additional Conditions**

(a) **Suspension**

Whenever "covered equipment" is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to: your address as shown in the Declarations, or at the address where the equipment is

located. Once suspended in this way, your insurance can be reinstated only by written notice of reinstatement from us.

(b) **Jurisdictional Inspections**

If "covered equipment" under this Equipment Breakdown Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

(6) The most we will pay for loss, damage or expense under this Equipment Breakdown Additional Coverage arising from any one "accident" is the applicable Limit of Insurance shown in the Declarations.

This Equipment Breakdown Additional Coverage will not increase the Limits of Insurance provided by this policy.

o. **Arson Reward for Conviction**

(1) In the event that a covered fire loss was the result of an act of arson, we will pay a reward to anyone, other than paid investigators, who gives legal authorities information that leads to the conviction of anyone who committed such arson.

(2) We will pay up to 10 percent of the amount of the insured fire loss or $10,000, whichever is less. This payment is the most we will pay in any one occurrence, regardless of the number of persons providing information or convicted of arson.

(3) The limit for this Arson Reward for Conviction Additional Coverage is in addition to the Limits of Insurance.

(4) No deductible applies to this Arson Reward for Conviction Additional Coverage.

p. **Money And Securities**

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit by direct route between any of these places, resulting directly from:

(a) Theft, meaning any act of stealing;

**Page 12 of 42**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **PB 00 02 11 14**

ACP BPRM3036811839                          INSURED COPY                                    35      00151

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

(b) Due to the giving or surrendering of property in any exchange or purchase;

(c) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

(d) From an unattended motor vehicle.

(e) That is covered under the Unauthorized Business Card Use or Computer Fraud And Funds Transfer Fraud Additional Coverages.

(3) The most we will pay under this Money and Securities Additional Coverage for loss in any one occurrence is:

(a) **Inside the Premises**, $10,000 for "money" and "securities" while:

(i) In or on the described premises; or

(ii) Within a bank or savings institution;

unless a higher Limit of Insurance for "money" and "securities" inside the premises is shown in the Declarations; and

(b) **Outside the Premises** (Limited – loss from an unattended motor vehicle is excluded), $10,000 for "money" and "securities" while anywhere else, unless a higher Limit of Insurance for "money" and "securities" outside the premises is shown in the Declarations.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

(6) The limit for this Money and Securities Additional Coverage is in addition to the Limits of Insurance.

q. **Appurtenant Structures**

(1) We will pay for direct physical loss of or damage to any separate garages, storage buildings, swimming pools, spas, fences, retaining walls and other appurtenant structures usual to your business at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

(2) The most we will pay for loss or damage under this Appurtenant Structures Additional Coverage in any one occurrence is 10% of the Building Limit of Insurance shown in the Declarations for that described building.

HOWEVER, if the value of any one garage, storage building, swimming pool, spa, fence, retaining wall or other appurtenant structure exceeds $50,000, this Appurtenant Structures Additional Coverage does not apply to that structure. The value of the property covered under this Appurtenant Structures Additional Coverage will be determined at replacement cost without deduction for depreciation. If the "Actual Cash Value – Buildings" option applies to Buildings, as shown in the Declarations, we will determine the value of property covered under this Appurtenant Structures Additional Coverage at "actual cash value".

Section E. PROPERTY LOSS CONDITIONS, paragraph 5.e.(1)(b) under Loss Payment does not apply in determining if property is covered under this Appurtenant Structures Additional Coverage. All Loss Payment provisions are otherwise applicable for loss or damage covered by this Additional Coverage.

(3) The limit for this Appurtenant Structures Additional Coverage is in addition to the Limits of Insurance.

r. **Back Up Of Sewer Or Drain Water Damage**

(1) For the purpose of this Back Up Of Sewer Or Drain Water Damage Additional Coverage the following definition is added;

"Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

PB 00 02 11 14

(a) The unusual and rapid accumulation or runoff of surface waters from any source;

(b) The overflow of inland or tidal waters; or

(c) Waves, tides or tidal waves.

(2) We will pay for loss of or damage to Covered Property caused by water that backs up or overflows from a sewer or drain pipe, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

HOWEVER, we will not pay for loss or damage that results from:

(a) Sewer back-up or sump pump overflow that occurs during the period beginning 10 days before and ending 10 days after a "flood" on the described premises;

(b) An insured's failure to keep a sump pump or it's related equipment in proper working condition;

(c) An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain pipe free from obstructions; or

(d) Sump pump failure which is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

(e) Damage that is caused by the breaking apart or cracking of a water or sewer pipe that is located off of the described premises.

(3) The most we will pay for loss or damage under this coverage is:

(a) $5,000 per building; or

(b) $25,000 in any one policy period, regardless of the number of losses;

unless a higher Limit of Insurance for Back Up Of Sewer Or Drain Water Damage is shown in the Declarations.

(4) The limit of insurance that applies to coverage under this Back Up Of Sewer Or Drain Water Damage Additional Coverage includes any loss arising from debris removal expense, Business Income Additional Coverage and Extra Expense Additional Coverage.

(5) The limit for this Back Up Of Sewer Or Drain Water Damage Additional Coverage is in addition to the Limits of Insurance.

(6) The Debris Removal Additional Coverage does not apply to this Back Up Of Sewer Or Drain Water Damage Additional Coverage.

s. **Dependent Properties – Business Income**

(1) We will pay for the actual loss of "business income" you sustain due to the necessary and unavoidable suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" or "secondary dependent property" caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a Dependent Property or Secondary Dependent Property is loss or damage to "electronic data." If the Dependent Property or Secondary Dependent Property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the property is repaired, rebuilt or replaced.

(2) We will only pay for loss of "business income" that occurs within 12 consecutive months after the date of direct physical loss or damage.

(3) This Dependent Properties – Business Income Additional Coverage is not subject to the Limits of Insurance.

(4) The "dependent property" or "secondary dependent property" must be located in the coverage territory of this policy.

t. **Limited Coverage for Fungi, Wet Rot Or Dry Rot**

(1) The coverage described in paragraphs t.(2) and t.(6) only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

   INSURED COPY

this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the

loss will be subject to the terms of this limited coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

u. **Building Property of Others**

(1) If you occupy a described premises as a tenant, and a written lease or rental agreement for that premises requires you to pay for loss of or damage to a part of building property you do not own, we will pay for direct physical loss of or damage to that part of building property, other than exterior glass, caused by a Covered Cause of Loss.

(2) The valuation of property covered under this Additional Coverage will be

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839                                            INSURED COPY                                            35      00154

**PB 00 02 11 14**

determined in accordance with the building valuation option (e.g. Actual Cash Value or Replacement Cost) shown on the policy declarations, or at the amount for which the tenant is liable under contract, whichever is less.

(3) The most we will pay for any loss or damage under this Building Property of Others Additional Coverage is $10,000, unless a higher limit is shown in the Declarations or the property is covered under another coverage form of this or all other collectible insurance. HOWEVER if a higher limit is described in the Covered Property Declarations or the property is covered under another coverage form of this or any other specifically scheduled property, that coverage amount will be in excess of the Building Property of Others Additional Coverage limit, up the applicable limit of insurance.

(4) The limit for this Building Property of Others Additional Coverage is in addition to the Limits of Insurance.

v. **Unauthorized Business Card Use**

(1) We will pay for the legal obligation you have because of the theft or unauthorized use of your business credit, debit or charge cards issued to you or registered in your name or the name of your business.

(2) The most we will pay under this Unauthorized Business Card Use Additional Coverage for loss in any one occurrence is $10,000.

(3) All loss:

   (a) Caused by one or more persons; or

   (b) Involving a single act or series of related acts;

   is considered one occurrence.

(4) The limit for this Unauthorized Business Card Use Additional Coverage is in addition to the Limits of Insurance.

w. **Computer Fraud And Funds Transfer Fraud**

(1) We will pay for:

   (a) Loss resulting from "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" or "securities" from your "transfer account"; or

   (b) Loss directly related to the use of any computer to fraudulently cause a transfer of covered property from inside the described premises to a person (other than a messenger) or place outside those premises.

(2) The most we will pay under this Computer Fraud And Funds Transfer Fraud Additional Coverage for loss in any one occurrence is $10,000.

(3) All loss:

   (a) Caused by one or more persons; or

   (b) Involving a single act or series of related acts;

   is considered one occurrence.

(4) The limit for this Computer Fraud and Funds Transfer Fraud Additional Coverage is in addition to the Limits of Insurance.

6. **COVERAGE EXTENSIONS**

Except as otherwise provided, the following Extensions apply to property located in or on the described building in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows.

a. **Newly Acquired or Constructed Property**

(1) **Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

   (a) Your new buildings while being built on the described premises; and

   (b) Buildings you acquire at premises other than the one described, intended for:

      (i) Similar use as the described building in the Declarations; or

      (ii) Use as a warehouse.

The most we will pay for loss or damage under this Buildings Coverage Extension is $1,000,000 at each building.

(2) **Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, other than at fairs or exhibitions, at any premises you acquire;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the described premises; or

(c) Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Business Personal Property Coverage Extension is $500,000 at each building.

(3) **Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 180 days after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

b. **Newly Acquired Property - Business Income**

(1) You may extend the insurance that applies to Business Income Additional Coverages to apply to property at any premises you newly acquire, other than temporary premises such as fairs or exhibitions, whether attended regularly or not.

(2) The most we will pay for loss under this Newly Acquired Property - Business Income Coverage Extension is the lesser of:

(a) The actual loss of "business income" you sustain, as provided for and described under the Business Income Additional Coverage; or

(b) $100,000.

(3) This insurance will end the earlier of:

(a) This policy expires;

(b) 180 days after you acquire the property; or

(c) You report values to us.

We will charge you any additional premium from the date you acquire the property.

c. **Personal Property Off-premises**

(1) You may extend the insurance provided by this policy to apply to your Covered Property while it is in the course of transit or at a premises you do not own, lease or operate.

(2) Transit under this Coverage Extension means the shipment of Covered Property that:

(a) Begins at a point of shipment to a specific destination;

(b) Includes both loading and unloading of Covered Property;

(c) Includes ordinary reasonable and necessary stops, interruptions, delays or transfers incidental to the route and method of shipment, including rest periods taken by the driver(s); and

(d) Ends upon acceptance of Covered Property by or on behalf of a consignee at the specified destination.

(3) Covered Property under this Coverage Extension does not include:

(a) "Money" and "Securities";

(b) "Valuable papers and records";

(c) Accounts Receivable;

(d) "Computer(s)" and "Electronic data", other than "Stock", and

(e) Tools and equipment of a mobile nature which are used in your business, other than "Stock".

**PB 00 02 11 14**

The most we will pay for loss or damage under this Personal Property Off-premises Coverage Extension is $15,000.

d. **Outdoor Trees, Shrubs, Plants, and Lawns**

(1) You may extend the insurance provided by this policy to apply to your outdoor trees, shrubs, plants and lawns (other than "stock"), including debris removal expense, caused by or resulting from any of the following Causes of Loss:

Fire; Lightning; Explosion; Aircraft or vehicles; Riot or civil commotion; Vandalism; or Theft.

(2) The most we will pay for loss or damage under this Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension is $10,000 in any one occurrence, unless a higher limit for outdoor trees, shrubs, plants, and lawns is shown in the Declarations, but not more than $2,500 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

(3) The Debris Removal Additional Coverage does not apply to this Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension.

e. **Outdoor Signs**

(1) You may extend the insurance provided by this policy to apply to your outdoor signs, including debris removal expense.

(2) The most we will pay for loss or damage under this Outdoor Signs Coverage Extension is $2,500 in any one occurrence, unless a higher limit for outdoor signs is shown in the Declarations.

(3) The Debris Removal Additional Coverage does not apply to this Outdoor Signs Coverage Extension.

f. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to

personal effects owned by you, your officers, your partners or "members", your "managers" or your employees.

HOWEVER, personal effects does not include:

(1) Tools or equipment used in your business; or

(2) "Money", "securities" or jewelry.

AND this Business Personal Property Coverage Extension does not apply to:

(a) Property while it is in the course of transit or at a premises you do not own, lease or operate

(b) Property in storage away from the described premises.

The most we will pay for loss or damage under this Personal Effects Coverage Extension is $10,000 in any one occurrence, but not more than $2,500 for the personal effects of any one individual.

g. **Valuable Papers And Records**

(1) You may extend the insurance provided by this policy to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Valuable Papers And Records Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

(2) This Valuable Papers And Records Coverage Extension does not apply to:

(a) Property held as samples or for delivery after sale;

(b) Property in storage away from the described premises.

(3) The most we will pay under this Valuable Papers And Records Coverage Extension for loss of or damage to "valuable papers and records", in any one occurrence at the described building is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $25,000.

(4) Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **PB 00 02 11 14**

ACP BPRM3036811839                              INSURED COPY                              35    00157

lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

(5) Section B. EXCLUSIONS of this Coverage Form does not apply to this Valuable Papers And Records Coverage Extension except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard;

(c) Paragraph B.1.f., War And Military Action;

(d) Paragraph B.2.f., Dishonesty;

(e) Paragraph B.2.g., False Pretense;

(f) Paragraph B.2.m.(2), Errors Or Omissions; and

(g) Paragraph B.3.

h. **Accounts Receivable**

(1) You may extend the insurance provided by this policy to apply to your records of accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending the payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Accounts Receivable Coverage Extension for loss or damage in any one occurrence at the described building is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For records of accounts receivable not at the described premises, the most we will pay is $25,000.

(3) Section B. EXCLUSIONS of this Coverage Form does not apply to this Accounts Receivable Coverage Extension except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard;

(c) Paragraph B.1.f., War And Military Action;

(d) Paragraph B.2.f., Dishonesty;

(e) Paragraph B.2.g., False Pretense;

(f) Paragraph B.3.; and

(g) Paragraph B.6., Accounts Receivable Exclusion.

i. **Salespersons Samples**

(1) You may extend the insurance that applies to Business Personal Property to apply to salespersons samples while away from the described premises.

(2) The most we will pay under this Salespersons Samples Coverage Extension for loss or damage in any one occurrence is $10,000.

j. **Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law**

If a Covered Cause of Loss occurs to property at the described premises, coverage is extended to include the amount of actual and necessary loss you sustain during the "period of restoration" of "operations" caused by or resulting from the enforcement of, or compliance with, any ordinance or law that:

(1) Regulates the construction or repair of any property;

(2) Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

(3) Is in force at the time of loss.

HOWEVER, coverage is not extended under this Business Income and Extra Expense –Increased Period of Restoration Due to Ordinance or Law Extension to include loss caused by or resulting from the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**PB 00 02 11 14**

k. **Removal Permit**

If Covered Personal Property is removed to a new premise that is described in the Declarations, you may extend this insurance to include that Covered Personal Property at each premise during the removal. Coverage at each premises will apply in the proportion that the value at each premises bears to the value of all Covered Personal Property being removed. This permit applies up to 30 days after the date Covered Personal Property is first removed at the previous premises; after that, this Removal Permit Coverage Extension does not apply at the previous premises.

l. **Electronic Data**

(1) You may extend the insurance provided by this policy to apply to the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss, a "computer" virus, harmful code or similar instruction introduced into or enacted on a "computer" system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a "computer" system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(2) To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(3) The most we will pay under this Electronic Data Coverage Extension for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of buildings, locations or "computer" systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this

amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

(5) This Electronic Data Coverage Extension does not apply to losses covered under the Equipment Breakdown Additional Coverage.

m. **Interruption of Computer Operations**

(1) You may extend the insurance that applies to Business Income and Extra Expense Additional Coverages to apply to a suspension of "operations" caused by an interruption in "computer" operations due to destruction or corruption of "electronic data" due to "specified causes of loss", Collapse or a "computer" virus, harmful code or similar instruction introduced into or enacted on a "computer" system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a "computer" system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(2) The most we will pay under this Interruption of Computer Operations Coverage Extension for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of buildings, locations or "computer" systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust

**Page 20 of 42**   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   **PB 00 02 11 14**

ACP BPRM3036811839   INSURED COPY   35   00159

this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(3) This Interruption of Computer Operations Coverage Extension does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (2) above has not been exhausted.

(4) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under paragraphs (1) through (3) of this Interruption of Computer Operations Coverage Extension.

(5) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under paragraphs (1) through (3) of this Interruption of Computer Operations Coverage Extension.

(6) This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

(7) This Interruption of Computer Operations Coverage Extension does not apply to losses covered under the Equipment Breakdown Additional Coverage.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes

concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

a. **Ordinance Or Law**

The enforcement of, or compliance with, any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris; or

(3) Requiring the removal or disposal of "pollutants".

This Ordinance Or Law Exclusion applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. **Earth Movement**

(1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic

PB 00 02 11 14

action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

With respect to coverage for volcanic action as set forth in **5(a), 5(b)** and **5(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which the 'otherwise caused' exclusion would apply are acts such as road construction, using tools such as jack hammers and causing ground vibrations in close proximity to the insured's building resulting in damage to the building's structure and foundation.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, including but not limited to radon gas, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage provided under the Equipment Breakdown Additional Coverage.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal wave, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain pipe, sump, sump pump or related equipment, except as provided under the Back Up Of Sewer Or Drain Water Damage Additional Coverage;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

(6) Water that overflows from any plumbing fixture because the water is unable to enter into an attached drain pipe, or water that is unable to enter into a drain pipe through any interior or exterior drain, drain strainer, catch basin, roof drain, scupper, or similar device designed to channel water from a plumbing fixture, roof, floor or other surface area.

(7) Discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off of the described premises and is part of a municipal water supply system or municipal sanitary sewer system.

This exclusion applies regardless of whether any of the above, in paragraphs (1) through (7), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

HOWEVER, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

But if any of the above paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

### h. Fungi, Wet Rot Or Dry Rot

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for

the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot result from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For Fungi, Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

### i. Virus Or Bacteria

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion h.;

(3) With respect to any loss or damage subject to the exclusion in paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

2. We will not pay for loss or damage caused by or resulting from any of the following:

### a. Electrical Apparatus

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

This Electrical Apparatus exclusion does not apply to the coverage provided under the Equipment Breakdown Additional Coverage.

### b. Consequential Losses

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839 INSURED COPY

**PB 00 02 11 14**

Delay, loss of use or loss of market.

c. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

d. **Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

This Steam Apparatus exclusion does not apply to the coverage provided under the Equipment Breakdown Additional Coverage.

e. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

f. **Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees is not covered.

With respect to Covered Property, including accounts receivable and "valuable papers

and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

g. **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

h. **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

i. **Collapse**

(1) Collapse, including any of the following conditions of property or any part of the property:

(a) An abrupt falling down or caving in;

(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to paragraph i.(1)(a) or i.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(2) This Exclusion i., does not apply:

(a) To the extent that coverage is provided under the Collapse Additional Coverage; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

j. **Pollutants**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage,

**Page 24 of 42**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **PB 00 02 11 14**

ACP BPRM3036811839                                    INSURED COPY                                    35     00163

migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

k. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

l. **Other Types Of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force, except as provided under the Equipment Breakdown Additional Coverages.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature;

(c) Marring or scratching; or

(d) Growth of tree, shrub or plant roots causing physical damage to any underground property, property foundations, roadways, walks, patios or other paved surfaces.

But if an excluded cause of loss that is listed in paragraphs (1) through (7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss", "accident" or building glass breakage.

m. **Errors Or Omissions**

Errors or omissions in:

(1) Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

(2) Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

n. **Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

o. **Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided under the Equipment Breakdown or Electronic Data Additional Coverages.

However, we will pay for direct loss or damage caused by lightning.

p. **Leakage or Seepage**

Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, whether continuous or intermittent from any:

(1) Heating, air conditioning or refrigerating system;

(2) Domestic appliance; or

(3) Plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture.

3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

**PB 00 02 11 14**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph B.1. above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion.

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any "extra expense", or increase of "business income" loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the

rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. LIMITS OF INSURANCE**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance shown in the Declarations, except as otherwise provided in this Section.

2. The limits applicable to Additional Coverages are in addition to the Limits of Insurance only if so indicated in that Section of this Coverage Form.

3. The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**PB 00 02 11 14**

ACP BPRM3036811839

**INSURED COPY**

35    00165

PB 00 02 11 14

4. **Building Limit – Automatic Increase**

   a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase is calculated as follows:

     (1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

     (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

     (3) The number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

   Example:

   If: The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

   The amount of increase is

   $100,000 x .08 x (146 / 365) = $3,200.

   c. The Automatic Increase percentage for Buildings will be the percentage shown in the Declarations. This percentage may change at each renewal date, unless a different percentage is selected by you.

5. **Business Personal Property Limit – Automatic Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase is calculated as follows:

     (1) Multiply the Limit of Insurance that applied on the most recent of the policy inception date, the policy renewal date, or any other policy change amending the Limit of Insurance, times

     (2) The percentage of increase shown in the Declarations, expressed as a decimal (example: 2% is .02), times

     (3) The number of days since the beginning of the current policy year, or since the effective date of the most recent policy change amending the

Business Personal Property limit, divided by 365.

   Example:

   If: The applicable limit is $150,000; and

     The annual percentage increase is 3%; and

     The number of days since the beginning of the policy year (or last policy change) is 146;

     Then the amount of increase is $150,000 x .03 x (146 / 365) = $1,800.

   c. The Automatic Increase percentage for Business Personal Property will be the average annual Index shown in the Declarations. This percentage may change at each renewal date.

   In no event will the Limit of Insurance be reduced unless you specifically request us to do so.

6. **Business Personal Property Limit – Seasonal Increase**

   a. Subject to paragraph 6.b., the Limit of Insurance for Business Personal Property is automatically increased by 25% to provide for seasonal variations.

   b. The increase described in paragraph 6.a will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

     (1) The 12 months immediately preceding the date the loss or damage occurs; or

     (2) The period of time you have been in business as of the date the loss or damage occurs.

D. **DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. With respect to the exterior building glass of the location identified in the Declarations, the most we will deduct from any loss or damage to the exterior building glass in any one occurrence is $250. The exterior building glass deductible of $250 will be utilized for any loss or damage to the exterior building glass regardless of the deductible amount for the scheduled property shown in the policy Declarations.

**PB 00 02 11 14**

But this $250 deductible will not increase the property deductible shown in the Declarations for the scheduled property. This $250 deductible is in addition to all other deductibles.

Example:

If: The amounts of loss to the damaged property are $50,000 (building) and $1,000 (exterior building glass.) The actual limit of insurance on the damaged property is $200,000 and the property deductible shown in the policy declarations is $1,000.

Based on the example information and the coverage language, the most we will pay for this claim is as follows:

Exterior Glass: $1,000 (loss amount) - $250 (exterior glass deductible) = $750 (amount paid for loss).

Building: $50,000 (loss amount) - $750 (remaining deductible amount after the exterior glass deductible) = $49,250 (amount paid for loss).

The most we will pay for this loss is $50,000 ($49,250 + $750). The portion of the total loss that is not covered due to the application of each deductible documented above is $1,000 ($750 + $250).

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Fire Extinguisher Recharge;

c. Business Income;

d. Extra Expense;

e. Civil Authority; and

f. Arson Reward for Conviction.

E. **PROPERTY LOSS CONDITIONS**

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection

be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss of or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

(6) As often as may be reasonably required, permit us to inspect the damaged property and examine your books and records, including financial records and tax returns.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED COPY

to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured or their employee under oath, while not in the presence of any other insured or employee, at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then at our request your answers under oath must be signed under penalty of perjury.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damaged property as described in e. below;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of, or compliance with, any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss, provided you have complied with all of the conditions set forth in paragraph 3. above.

d. We will not pay you more than your financial interest in the Covered Property.

e. Except as provided in (2) through (9) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts, subject to E.5.b. above:

(i) The Limit of Insurance under this policy that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

i. Of comparable material and quality; and

ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

(b) You may make a claim for loss or damage covered by this insurance on an "actual cash value" basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an "actual cash value" basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(c) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if your loss qualifies for payment on a replacement cost basis

**PB 00 02 11 14**

and the cost of repair or replacement is $2,500 or less, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation.

(2) If the "Actual Cash Value – Buildings" option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at "actual cash value".

(3) The following property at "actual cash value":

    (a) Used or second-hand merchandise held in storage or for sale;

    (b) Property of others, other than leased personal property you have a contractual responsibility to insure, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

    (c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

    (d) Manuscripts; and

    (e) Works of art, antiques or rare articles, including but not limited to etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

    (a) Replacement cost if you make repairs promptly.

    (b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

       (i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

       (ii) Divide the amount determined in (i) above by the number of days from the installation of

improvements to the expiration of the lease.

      If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    (c) Nothing if others pay for repairs or replacement.

(6) Applicable only to Money and Securities Additional Coverage, and Employee Dishonesty Optional Coverage:

    (a) "Money" at its face value and in general circulation; and

    (b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to Accounts Receivable:

    (a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

       (i) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

       (ii) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    (b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

       (i) The amount of the accounts for which there is no loss or damage;

       (ii) The amount of the accounts that you are able to reestablish or collect;

       (iii) An amount to allow for probable bad debts that you are normally unable to collect; and

       (iv) All unearned interest and service charges.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**PB 00 02 11 14**

INSURED COPY

(8) "Stock" you have sold but not delivered at the selling price less expenses you otherwise would have had.

(9) Business Income and Extra Expense:

    (a) We will determine the amount of a "business income" loss based on:

        (i) the net income of your business before the direct physical loss or damage occurred;

        (ii) the likely net income of your business if no physical loss or damage occurred, but not including any likely increase in net income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

        (iii) the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

        (iv) other relevant sources of information, including;

            i. financial records and accounting procedures;

            ii. bills, invoices and other vouchers; and

            iii. deeds, liens and contracts.

    (b) We will determine the amount of "extra expense" based on:

        (i) all expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage occurred. The following will be deducted from the total of such expenses:

            i. the remaining salvage value of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

            ii. any "extra expense" that is paid for by other insurance,

        (ii) all necessary expenses that reduce the "business income" loss that otherwise would have been incurred.

    f. Our payment for loss of or damage to property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

    g. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

    h. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

        (1) We have reached agreement with you on the amount of loss; or

        (2) An appraisal award has been made.

    i. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property.

    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    

ACP BPRM3036811839        INSURED COPY        35    00170

**PB 00 02 11 14**

We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

HOWEVER if, at the time of loss, the amount of loss or damage to your property exceeded our Limit of Insurance and your property in excess of the Limit of Insurance was turned over to us, you retain your rights to recovery on such uninsured property. We will return to you a portion of any recovery on that property based upon the proportion of the loss in excess of our Limit of Insurance bears to the total loss.

7. **Resumption Of Operations**

We will reduce the amount of your:

a. Loss payable under Business Income Additional Coverage, other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Loss payable under Extra Expense Additional Coverage to the extent you can return "operations" to normal and discontinue such "extra expense".

8. **Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage, including damage that is caused by or resulting from freezing;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

F. **PROPERTY GENERAL CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1. **Control Of Property**

If any person other than you has control of your property after a loss, a breach of these conditions by such a person, beyond your direction or control, will not be considered a breach of these conditions by you, and it will not affect this insurance.

The breach of any condition of this Coverage Form, other than the Concealment, Misrepresentation or Fraud Common Policy Condition, at any one or more locations will not affect coverage at any locations where, at the time of loss or damage, the breach of condition did not exist.

2. **Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with

PB 00 02 11 14

the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

3. **No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4. **Policy Period, Coverage Territory**

Under this form:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

G. **OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These Optional Coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1. **Employee Dishonesty Optional Coverage**

a. We will pay for:

(1) Direct loss of or damage to Business Personal Property and "money" and "securities";

(2) The legal obligation you have because of the theft or unauthorized use of your business credit, debit or charge cards issued to you or registered in your name or the name of your business;

(3) Loss resulting from "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" or "securities" from your "transfer account"; or

(4) Loss directly related to the use of any computer to fraudulently cause a transfer of covered property from inside the described premises to a person (other than a messenger) or place outside those premises;

resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you, your partner or an officer of a closely held corporation) with the manifest intent to:

(1) Cause you to sustain loss or damage; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a) Any employee; or

(b) Any other person or organization.

b. We will not pay for loss or damage:

PB 00 02 11 14    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 33 of 42

ACP BPRM3036811839    INSURED COPY    35    00172

PB 00 02 11 14

(1) Resulting from any dishonest or criminal act that you, any of your partners, "members" or any officer of a closely held corporation commit whether acting alone or in collusion with other persons.

(2) Resulting from any dishonest act committed by any of your employees (except as provided in paragraph a.), "managers" or directors:

(a) Whether acting alone or in collusion with other persons; or

(b) While performing services for you or otherwise.

(3) The only proof of which as to its existence or amount is:

(a) An inventory computation; or

(b) A profit and loss computation.

c. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of acts;

is considered one occurrence.

e. If any loss is covered:

(1) Partly by this insurance; and

(2) Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid and regardless that previous policies were in effect, whether issued by us, any affiliated company or any other company, this coverage shall not be cumulative from year to year or period to period.

f. This Employee Dishonesty Optional Coverage is cancelled as to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under paragraph h. above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

j. With respect to the Employee Dishonesty Optional Coverage in paragraph G.1., employee means:

(1) Any natural person:

(a) While in your service or for 30 days after termination of service;

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent employee as defined in paragraph (1) above, who is on leave; or

(b) To meet seasonal or short-term workload conditions;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in paragraph (2) above;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839

PB 00 02 11 14

(4) Any natural person who is a former employee, director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

(5) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

2. **Ordinance or Law Optional Coverages**

   a. The Coverage(s) provided by this Ordinance or Law Optional Coverage apply only if both paragraphs a.(1) and a.(2) are satisfied and are then subject to the qualifications set forth in a.(3).

      (1) The ordinance or law:

         (a) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

         (b) Is in force at the time of loss.

         But this Ordinance or Law Optional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

      (2) The building sustains direct physical damage:

         (a) That is covered under this policy and such damage results in enforcement of, or compliance with, the ordinance or law; or

         (b) That is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of, or compliance with, the ordinance or law.

         (c) But if the damage is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this Ordinance or Law Optional Coverage even if the building has also sustained covered direct physical damage.

      (3) In the situation described in a.(2)(b) above, we will not pay the full amount of loss otherwise payable under the terms of this Ordinance or Law Optional Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

         (Section f. of this Ordinance or Law Optional Coverage provides an example of this procedure.)

         HOWEVER, if the covered direct physical damage alone would have resulted in enforcement of, or compliance with, the ordinance or law, then we will pay the full amount of loss otherwise payable under terms of this Ordinance or Law Optional Coverage.

   b. **Coverage 1 - Loss to the Undamaged Portion of Building**

      When the Declarations show that Ordinance or Law - Coverage 1 applies at a described building and if a Covered Cause of Loss occurs to covered Building property, we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of or compliance with an ordinance or law that requires demolition of undamaged parts of the same building.

      This Coverage 1 of Ordinance or Law Optional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the covered Building property. This portion of the Ordinance or Law Optional Coverage does not increase the Limit of Insurance.

   c. **Coverage 2 - Demolition Cost and Broadened Increased Cost of Construction**

      When the Declarations show that Ordinance or Law - Coverage 2 applies at a described building and if a Covered Cause of Loss occurs to covered Building property:

ACP BPRM3036811839                    INSURED COPY                    35    00174

**PB 00 02 11 14**

(1) We will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of, or compliance with, an ordinance or law that requires demolition of such undamaged property; and

(2) We will pay the increased cost to repair or reconstruct damaged portions of the building; and/or

reconstruct or remodel undamaged portions of that building, whether or not demolition is required

when the increased cost is a consequence of enforcement or compliance with the minimum requirements of the ordinance or law.

HOWEVER, we will not pay for the increased costs to reconstruct or remodel undamaged portions of that Building property:

(a) unless the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law; or

(b) if the building is not repaired, reconstructed or remodeled.

Paragraph e. of 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS does not apply.

The most we will pay for the total of all covered losses under this Coverage 2 of Ordinance or Law Optional Coverage, in any one occurrence is the Limit of Insurance shown in the Declarations.

The $25,000 Limit of Insurance for Increased Cost of Construction – Damaged Property Additional Coverage remains available for damaged property and is separate from the Limit of Insurance shown in the Declarations for Ordinance or Law Optional Coverage 2.

This portion of the Ordinance or Law Optional Coverage is in addition to the Limits of Insurance.

d. **Additional Terms and Conditions of Ordinance or Law**

(1) The terms of this Ordinance or Law Optional Coverage apply separately to each building to which this Optional Coverage applies.

(2) With respect to this Ordinance or Law Optional Coverage, we will not pay for:

(a) Enforcement of, or compliance with, any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot or bacteria; or

(b) The costs associated with the enforcement of or compliance with any ordinance, law, rule, or regulation which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

(3) Under this Ordinance or Law Optional Coverage, we will not pay for loss due to any ordinance or law that:

(a) You were required to comply with before the loss, even if the building was undamaged; and

(b) You failed to comply with.

(4) Loss Payment

(a) When Coverage 1 applies, loss payment for that building, including damaged and undamaged portions, will be determined as follows:

(i) If the property is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

i. The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same described premises and to the same height, floor area, style and comparable quality of the original property insured; or

ii. The Limit of Insurance applicable to the covered Building property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED COPY

(ii) If the property is not repaired or replaced, we will not pay more than the lesser of:

    i.   The "actual cash value" of the building at the time of loss; or

    ii.  The Limit of Insurance applicable to the covered Building property.

(b) When Coverage 2 applies, the most we will pay for the total of all covered losses for Demolition Cost and Broadened Increased Cost of Construction is the Limit of Insurance for Coverage 2.

Subject to this Limit of Insurance, the following loss payment provisions apply:

(i) For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described building.

(ii) With respect to Broadened Increased Cost of Construction:

    i.   We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same or another premises; and

    ii.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(iii) If the building is repaired or replaced at the same described premises, or if you elect to rebuild at another premises, the most we will pay under Coverage 2 is the increased cost of construction at the same described premises.

(iv) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage 2 is the increased cost of construction at the new premises.

e. This Ordinance or Law Optional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Optional Coverage.

f. Example of Proportionate Loss Payment for Ordinance or Law Coverage Losses (procedure as set forth in Section a.(3) of this Ordinance or Law Optional Coverage).

Assume:

- Wind is a Covered Cause of Loss. Flood is an excluded Cause of Loss;

- The building has a value of $200,000;

- Total direct physical damage to building: $100,000;

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;

- Portion of direct physical damage that is covered (caused by wind): $30,000;

- Portion of direct physical damage that is not covered (caused by flood): $70,000; and

- Loss under Ordinance or Law Coverage 2 of this endorsement: $60,000.

Step 1: Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step 2: Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage 2 loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverage 1 of this endorsement.

PB 00 02 11 14

3. **Optional Amendment of Coverage - Exclude Theft**

When "– Excluding Theft" is stated in the Declarations after **Business Personal Property** coverage, then under:

a. Paragraph 3. of Section B. EXCLUSIONS, the following exclusion is added:

**Theft:** Theft or attempted theft resulting in loss of or damage to Business Personal Property.

b. The Money and Securities Additional Coverage, paragraph (1)(a) is deleted.

H. **PROPERTY DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Accident"** means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

b. Artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

d. Loss of or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. **"Actual Cash Value"** means the cost to repair or replace Covered Property, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

3. **"Business Income"** means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; plus

b. Necessary continuing normal operating expenses incurred, while "operations" are suspended, including payroll.

4. **"Computer"** means:

a. Programmable electronic equipment that is used to store, retrieve and process data; and

b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production type machinery or equipment.

5. **"Counterfeit money"** means an imitation of "money" that is intended to deceive and to be taken as genuine.

6. **"Covered equipment"** means, Covered Property:

a. That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

b. Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

None of the following is "covered equipment":

a. Structure, foundation, cabinet, compartment or air supported structure or building;

b. Insulating or refractory material;

c. Sewer piping, underground vessels or piping, piping forming a part of a sprinkler system or water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

d. Dragline, excavation or construction equipment;

e. Equipment manufactured by you for sale; or

f. Vehicle, aircraft or floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel. However, any property that is stationary, permanently

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PB 00 02 11 14

installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle, aircraft or floating vessel.

7. **"Dependent property"** means property owned or operated by others, not including any described premises, on whom you depend on to:

   a. Deliver materials or services to you, or to others for your account. Services does not include water supply services, water removal services, steam, fuel, communication, or power supply services.

   b. Purchase your products or services.

   c. Manufacture products for delivery to your customers under contract of sale.

   d. Attract customers to your business. But this does not include firms in the business of promoting or advertising your business.

The "Dependent property" must be located in the coverage territory of this policy.

However, "Dependent property" does not mean any property owned or operated by others on whom you depend on to provide internet services; web hosting services; internet hosting services; space on any server, computer, computer system, or other similar equipment; web pages; social media or networking services; or similar services.

8. **"Electronic data"** means information, facts or "computer" programs stored as or on, created or used on, or transmitted to or from "computer" software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of "computer" software which are used with electronically controlled equipment. The term "computer" programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

9. **"Extra Expense"** means expense incurred:

   a. To avoid or minimize the suspension of business and to continue "operations":

     (1) At the described premises; or

     (2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.

   b. To minimize the suspension of business if you cannot continue "operations".

   c. To:

     (1) Repair or replace any property; or

     (2) Research, replace or restore the lost information on damaged "valuable papers and records";

   to the extent it reduces the amount of loss that otherwise would have been payable under the Extra Expense Additional Coverage or the Business Income Additional Coverage.

10 **"Fraudulent instruction"** means:

   a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

   b. A written instruction (other than those described in Paragraph A.5.k.) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

   c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an employee but which was in fact fraudulently transmitted by someone else without your or the employee's knowledge or consent.

11. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

12. **"Hazardous substance"** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

13. **"Manager"** means a person serving in a directorial capacity for a limited liability company.

14. **"Member"** means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

15. **"Money"** means:

ACP BPRM3036811839     INSURED COPY     35   00178

**PB 00 02 11 14**

    a.  Currency, coins and bank notes whether or not in current use and having a face value; and

    b.  Travelers checks, register checks and money orders held for sale to the public.

16.  **"Operations"** mean your business activities occurring at the described premises.

17.  **"Ordinary payroll expenses"** mean payroll expenses for all your employees except:

    a.  Officers;

    b.  Executives;

    c.  Department Managers;

    d.  Employees under contract; and

    e.  Additional Exemptions shown in the Declarations as:

        (1)  Job Classifications; or

        (2)  Employees.

Ordinary payroll expenses include:

    a.  Payroll;

    b.  Employee benefits, if directly related to payroll;

    c.  FICA payments you pay;

    d.  Union dues you pay; and

    e.  Workers' compensation premiums.

18.  **"Period of restoration"** means:

    a.  For other than the Dependent Properties Additional Coverage and Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

        (1)  The period of time that:

            (a)  Begins the number of hours shown in the Declarations after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

            (b)  Ends on the earlier of:

                (i)  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

                (ii)  The date when business is resumed at a new permanent location.

        (2)  "Period of restoration" does not include any increased period required due to the enforcement of, or compliance with, any ordinance or law that:

            (a)  Regulates the construction, use or repair, or requires the tearing down of any property; or

            (b)  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

        (3)  The expiration date of this policy will not cut short the "period of restoration".

    b.  For Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

        (1)  The period of time that:

            (a)  Begins:

                (i)  At the time of direct physical loss or damage for Business Income Additional Coverage; or

                (ii)  Immediately after the time of direct physical loss or damage for Extra Expense Additional Coverage:

                  Caused by or resulting from any Covered Cause of Loss at the described premises; and

            (b)  Ends on the earlier of:

                (i)  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

                (ii)  The date when business is resumed at a new permanent location.

        (2)  "Period of restoration" includes any increased period required to repair or reconstruct the property to conform with the minimum standards or any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

        (3)  The expiration date of this policy will not cut short the "period of restoration".

    c.  For Dependent Properties Additional Coverage:

        (1)  The period of time that:

            (a)  Begins:

ACP BPRM3036811839    INSURED COPY    35   00179

24 hours after the time of direct physical loss or damage for Business Income Additional Coverage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

(b) Ends on the earlier of:

(i) The date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when your business is resumed at a permanent new location

(2) "Period of restoration" does not include any increased period required due to the enforcement of, or compliance with, any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

19. **"Perishable goods"** mean personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

20. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

21. **"Secondary dependent property"** means an entity which is not owned or operated by a Dependent property and which;

(a) Delivers materials or services to a dependent property, which in turn are used by the Dependent property in providing materials or services to you; or

(b) Accepts materials or services from a Dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a Secondary dependent property.

Any property which delivers any of the following services is not a Secondary dependent property with respect to such services:

(i) Water supply services;

(ii) Wastewater removal services;

(iii) Communication supply services; or

(iv) Power supply services.

The Secondary dependent property must be located in the coverage territory of this policy:

However, "Secondary Dependent Property" does not mean any property owned or operated by others on whom you depend on to provide internet services; web hosting services; internet hosting services; space on any server, computer, computer system, or other similar equipment; web pages; social media or networking services; or similar services.

22. **"Securities"** mean negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money" or lottery tickets held for sale.

23. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839                    INSURED COPY                    35   00180

PB 00 02 11 14

    (1) The cost of filling sinkholes; or

    (2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

    (1) Personal property in the open; or

    (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

HOWEVER, the following is not considered water damage;

    (1) Damage from constant or repeated seepage or leakage of water or steam that is either located on the described premises or off of the described premises over a period of weeks, months or years from any part of a system or appliance containing water or steam. and;

    (2) Discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off of the described premises and is part of a municipal water supply system or municipal sanitary sewer system.

24. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

25. **"Transfer account"** means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

b. By means of written instructions (other than those described in Paragraph A.5.k.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

26. **"Valuable papers and records"** mean inscribed, printed, or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

HOWEVER, "valuable papers and records" does not mean "money" or "securities".

    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PB 00 02 11 14

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

## TABLE OF CONTENTS

I. COVERAGES ......................................................................................................................... 2
  COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY ........................ 2
    INSURING AGREEMENT................................................................................................... 2
    EXCLUSIONS .................................................................................................................... 3
    TENANTS PROPERTY DAMAGE LEGAL LIABILITY....................................................... 9
  COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY ............................ 9
    INSURING AGREEMENT................................................................................................... 9
    EXCLUSIONS .................................................................................................................. 10
  COVERAGE C – MEDICAL PAYMENTS ........................................................................... 13
    INSURING AGREEMENT................................................................................................. 13
    EXCLUSIONS .................................................................................................................. 13
  SUPPLEMENTARY PAYMENTS – COVERAGES A AND B ............................................. 14
II. WHO IS AN INSURED ........................................................................................................ 15
  Automatic Additional Insureds ........................................................................................... 16
    Co-Owners of Insured Premises........................................................................................ 16
    Controlling Interest............................................................................................................. 16
    Grantor of Franchise or License ........................................................................................ 16
    Lessors of Leased Equipment ........................................................................................... 16
    Managers or Lessors of Leased Premises ........................................................................ 17
    Mortgagee, Assignee or Receiver ..................................................................................... 17
    Owners or Other Interest from Whom Land has been Leased............................................ 17
    State or Political Subdivisions - Permits Relating to Premises........................................... 17
III. LIMITS OF INSURANCE AND DEDUCTIBLE ................................................................... 17
  General Aggregate Limit of Insurance (Other than Products-Completed Operations)........ 17
  Products-Completed Operations Aggregate Limit of Insurance ......................................... 17
  Personal and Advertising Injury Limit of Insurance ........................................................... 18
  Each Occurrence Limit of Insurance.................................................................................. 18
  Tenants Property Damage Legal Liability Limit of Insurance ............................................. 18
  Medical Payments Limit of Insurance ................................................................................ 18
  Property Damage Deductible.............................................................................................. 18
IV. LIABILITY CONDITIONS .................................................................................................... 18
  Bankruptcy ........................................................................................................................ 18
  Duties In The Event Of Occurrence, Offense, Claim Or Suit ............................................. 18
  Legal Action Against Us ..................................................................................................... 19
  Separation Of Insureds ...................................................................................................... 19
V. DEFINITIONS ..................................................................................................................... 19

**PB 00 06 11 14**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 23**

ACP BPRM3036811839                              **INSURED COPY**                                    35      00182

PB 00 06 11 14

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II. WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section V. DEFINITIONS.

I. **COVERAGES**

A. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   1. **INSURING AGREEMENT**

      a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

         HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

         We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

         (1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

         (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

         No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

      b. This insurance applies to "bodily injury" and "property damage" only if:

         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

         (2) The "bodily injury" or "property damage" occurs during the policy period; and

         (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II. WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

      c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

      d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

         (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2.  **EXCLUSIONS**

This insurance, including any duty we have to defend "suits", does not apply to:

a.  **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by the insured.

This exclusion applies even if the resulting "bodily injury" or "property damage":

(1) Is of a different kind, quality or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.

HOWEVER, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense

has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by an insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license; or

(b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839                                INSURED COPY                                35    00184

**PB 00 06 11 14**

considered the business of selling, serving or furnishing alcoholic beverages.

d. **Laws**

Any liability or legal obligation of any insured with respect to "bodily injury" or "property damage" arising out of any of the following:

(1) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, religion or religious belief, age, economic status, income, medical condition, pregnancy, parenthood or mental or physical disability;

(2) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

(3) The Migrant and Seasonal Agricultural Worker Protection Act;

(4) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

(5) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

(6) Any other similar statutes, ordinances, orders, directives or regulations.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

HOWEVER, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify that building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRM3036811839

**INSURED COPY**

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

HOWEVER, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

HOWEVER, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

**PB 00 06 11 14**

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

HOWEVER, this exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

(b) The operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Other than damage by the Covered Causes of Loss provided under Tenants Property Damage Legal Liability, paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Tenants Property Damage Legal Liability as described in Section III. LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product", arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

HOWEVER, this exclusion does not apply if the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Bodily Injury To Any Insured**

"Bodily injury" to:

(1) Any insured, except "volunteer workers"; or

(2) Any insured whenever the ultimate benefits of any indemnification will accrue directly or indirectly to any insured or the heirs of any insured.

q. **Damage To Named Insured's Property**

Any claim or "suit" for "property damage" by you or on your behalf against any other person or organization that is also a Named Insured under this policy.

r. **Abuse or Molestation**

"Bodily injury" or "property damage" arising out of:

(1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(2) The negligent:

(a) Employment;

(b) Investigation;

(c) Supervision;

(d) Reporting to the proper authorities, or failure to so report; or

(e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph (1) above.

s. **Asbestos, Electromagnetic, Lead or Radon**

"Bodily injury" or "property damage" arising out of:

(1) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

(2) Electromagnetic emissions or radiation including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the

**PB 00 06 11 14**

presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

(3) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

(4) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions.

t. **Employment Practices**

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

u. **Fiduciary Responsibility**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity. This exclusion does not apply if you are; a trust, as described in Section II. WHO IS AN INSURED.

v. **Professional Services**

"Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to, any:

(1) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection, engineering, or architectural service, advice or instruction;

(4) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

(5) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage;

(7) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Ear or other body piercing service, treatment, advice or instruction; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**PB 00 06 11 14**

ACP BPRM3036811839     **INSURED COPY**     35    00189

PB 00 06 11 14

(9) Service, treatment, advice or instruction in the practice of pharmacy.

(10) Electronic data processing, computer consulting or computer programming services, advice or instruction.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the rendering or failure to render of any professional service.

w. **Testing, Evaluating or Consulting**

"Bodily injury" or "property damage" arising out of:

(1) An error, omission, defect or deficiency:

(a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

(b) In experimental data or the insured's interpretation of that data.

(2) The reporting of or reliance upon any such test, evaluation, consultation or advice.

x. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

y. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

3. **TENANTS PROPERTY DAMAGE LEGAL LIABILITY**

**Certain Exclusions Not Applicable**

Exclusions c. through n., p., q., r., t., u., v. and w. do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, if such "property damage" arises out of a Covered Cause Of Loss provided under the BUSINESSOWNERS PROPERTY COVERAGE FORM. A separate limit of insurance, called Tenants Property Damage Legal Liability Limit, applies to this coverage as described in Section III. LIMITS OF INSURANCE.

B. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **INSURING AGREEMENT**

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and

ACP BPRM3036811839                                    INSURED COPY                                    35    00190

**PB 00 06 11 14**

advertising injury" to which this insurance does not apply.

We may, at our sole discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **EXCLUSIONS**

This insurance, including any duty we have to defend "suits", does not apply to personal and advertising injury:

a. **Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Act**

Arising out of a criminal act committed by or at the direction of any insured or a criminal act committed by another for which any insured is held to be vicariously liable.

HOWEVER, this exclusion does not apply to "personal injury" resulting from the use of reasonable force to protect persons or property.

e. **Contractual Liability**

For which the insured has assumed liability in a contract or agreement. HOWEVER, this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Price**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

HOWEVER, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Business**

Committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting.

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

HOWEVER, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under Section V. DEFINITIONS.

k. **Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or

**Page 10 of 23**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **PB 00 06 11 14**

ACP BPRM3036811839                         **INSURED COPY**                                    35      00191

any other similar tactics to mislead another's potential customers:

m. **Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

With respect to any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

However caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

p. **Recording and Distribution Of Material In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

q. **Laws**

Any liability or legal obligation of any insured arising out of any of the following:

(1) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, parenthood, religion or religious belief, age, economic status, income, medical condition, pregnancy, or mental or physical disability;

(2) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

(3) The Migrant and Seasonal Agricultural Worker Protection Act;

(4) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

(5) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

(6) Any other similar statutes, ordinances, orders, directives or regulations;

r. **Abuse or Molestation**

Arising out of:

(1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(2) The negligent:

(a) Employment;

(b) Investigation;

(c) Supervision;

(d) Reporting to the proper authorities, or failure to so report; or

PB 00 06 11 14      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 11 of 23

ACP BPRM3036811839      INSURED COPY      35   00192

PB 00 06 11 14

(e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph (1) above;

**s.  Employment Practices**

To:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

**t.  Asbestos, Electromagnetic, Lead or Radon**

Arising out of:

(1) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

(2) Electromagnetic emissions or radiation including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure,

existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

(3) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

(4) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions;

**u.  Fiduciary Responsibility**

That arises out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity This exclusion does not apply if you are; a trust, as described in Section II. WHO IS AN INSURED.;

**v.  Professional Services**

That arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to any:

(1) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection, engineering, or architectural service, advice or instruction;

(4) Medical, surgical, psychiatric, chiropractic, chiropody,

physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

(5) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage.

(7) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Ear or other body piercing service, treatment, advice or instruction; or

(9) Service, treatment, advice or instruction in the practice of pharmacy; or

(10) Electronic data processing, computer consulting or computer programming services, advice or instruction.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the offense which caused the "personal and advertising injury" involved the rendering or failure to render of any professional service.

w. **Testing, Evaluation or Consulting**

Arising out of:

(1) An error, omission, defect or deficiency:

(a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

(b) In experimental data or the insured's interpretation of that data.

(2) The reporting of or reliance upon any such test, evaluation, consultation or advice.

C. **COVERAGE C – MEDICAL PAYMENTS**

1. **INSURING AGREEMENT**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **EXCLUSIONS**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

PB 00 06 11 14

e. **Athletic Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under COVERAGE A.

D. **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". HOWEVER, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as

a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary

**Page 14 of 23**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **PB 00 06 11 14**

ACP BPRM3036811839    INSURED COPY    35    00195

litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I. COVERAGE, A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## II. WHO IS AN INSURED

1. If you are:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. A trust, you are an insured. Your trustee or co-trustees are also insureds, but only with respect to their duties as a trustee in connection with your property, operations and activities.

   e. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a

partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

HOWEVER, none of these "employees" or "volunteer workers" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   (a) Owned, occupied or used by; or

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

PB 00 06 11 14          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 15 of 23

ACP BPRM3036811839                                      INSURED COPY                                      35    00196

**PB 00 06 11 14**

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

  d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

  HOWEVER:

  a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  b. COVERAGE A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  c. COVERAGE B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

4. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

5. **Automatic Additional Insureds**

  Any of the following persons or organizations are automatically insureds when you and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

  HOWEVER, the insurance afforded to any of the following additional insureds only applies to the extent permitted by law and will not be broader than that which you are required by the contract or agreement to provide for any of the following additional insureds.

  a. **Co-Owners of Insured Premises**

    Any person or organization with whom you co-own a premises insured under this policy is an additional insured, but only with respect to their liability as the co-owner of such premises.

    HOWEVER, their status as additional insured under this policy ends when you cease to co-own such premises with that person or organization.

  b. **Controlling Interest**

    Any person or organization that has a controlling interest in you as an additional insured, but only with respect to liability arising out of:

    (1) Their financial control of you; or

    (2) Their ownership, maintenance or control of premises you lease or occupy;

    subject to the following additional exclusion:

    This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

    HOWEVER, their status as additional insured under this policy ends when they cease to have such controlling interest in you.

  c. **Grantor of Franchise or License**

    Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

    HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you granting the franchise or license ends.

  d. **Lessors of Leased Equipment**

    Any person or organization from whom you lease equipment by written contract or agreement is an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of the equipment leased to you by that person or organization, subject to the following additional exclusion:

    This insurance, including any duty we have to defend "suits", does not apply to "bodily injury" or "property damage" arising out of, in whole or in part, or results from, in whole or in part, the active negligence of such person   or organization.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you for such leased equipment ends.

e. **Managers or Lessors of Leased Premises**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

f. **Mortgagee, Assignee or Receiver**

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

g. **Owners or Other Interest from Whom Land has been Leased**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your maintenance or use of that part of the land leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to lease that land.

h. **State or Political Subdivisions - Permits Relating to Premises**

Any state or political subdivision which has issued a permit in connection with premises insured by this policy which you own, rent, or control is an additional insured, but only with respect to the following hazards:

(1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

(2) The construction, erection, or removal of elevators; or

(3) The ownership, maintenance, or use of any elevators covered by this insurance.

HOWEVER, their status as additional insured under this policy ends when the permit ends.

III. **LIMITS OF INSURANCE AND DEDUCTIBLE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. **General Aggregate Limit of Insurance** (Other than Products-Completed Operations)

    The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under COVERAGE C;

    b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under COVERAGE B.

    The General Aggregate Limit applies separately to each of your described premises. For the purposes of this provision, premises means involving the same or connecting lots, or premises whose connection is interrupted only by a public

**PB 00 06 11 14**

street, roadway or waterway, or railroad right-of-way.

3. **Products-Completed Operations Aggregate Limit of Insurance**

   The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. **Personal and Advertising Injury Limit of Insurance**

   Subject to paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under COVERAGE B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. **Each Occurrence Limit of Insurance**

   Subject to paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under COVERAGE A; and

   b. Medical expenses under COVERAGE C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. **Tenants Property Damage Legal Liability Limit of Insurance**

   Subject to paragraph 5. above, the Tenants Property Damage Legal Liability Limit is the most we will pay under COVERAGE A for damages because of all "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence".

7. **Medical Payments Limit of Insurance**

   Subject to paragraph 5. above, the Medical Payments Limit is the most we will pay under COVERAGE C for all medical expenses because of "bodily injury" sustained by any one person.

8. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

9. **Property Damage Deductible**

If a deductible amount is shown in the Liability Declarations, the following provisions apply:

a. If a deductible amount for Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "occurrence".

b. If a deductible amount for Car Wash Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one claim.

c. If we pay all or any part of a deductible to settle any claim or "suit", upon notification of such payment by us, you shall promptly reimburse us for the amount of the deductible that has been paid by us.

## IV. LIABILITY CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You and any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply; and

(5) Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned

in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**V.  DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding websites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. **"Auto"** means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

HOWEVER, "auto" does not include "mobile equipment".

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph a. above; or

PB 00 06 11 14

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in paragraph a. above; or

   (2) The activities of a person whose home is in the territory described in paragraph a. above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in paragraph a. above or in a settlement we agree to.

5. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

6. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

8. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. **"Insured contract"** means:

   a. A contract for a lease of premises. HOWEVER, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph (2) above and supervisory, inspection, architectural or engineering activities.

10. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. **"Loading or unloading"** means the handling of property:

**Page 20 of 23**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **PB 00 06 11 14**

ACP BPRM3036811839    INSURED COPY    35  00201

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, forklifts, farm machinery, farm implements and other vehicles designed for use or used principally off public roads. This includes motorized golf carts, snowmobiles, and other land vehicles designed for recreational use;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles, other than snowmobiles, that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   HOWEVER, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; and

   (3) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers.

   HOWEVER, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their

**PB 00 06 11 14**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 21 of 23**

ACP BPRM3036811839                    INSURED COPY                    35    00202

**PB 00 06 11 14**

derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

16. **"Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

HOWEVER, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

HOWEVER, if your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent, all "bodily injury" and "property damage" that arises out of "your products" is included if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or

unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. **"Property damage"** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. **"Volunteer worker"** means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. **"Your product":**

a. Means:

(1) Any goods or products, other than real property, manufactured, sold,

**Page 22 of 23**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **PB 00 06 11 14**

ACP BPRM3036811839                          INSURED COPY                          35      00203

PB 00 06 11 14

handled, distributed or disposed of by:

    (a)  You;

    (b)  Others trading under your name; or

    (c)  A person or organization whose business or assets you have acquired; and

  (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.  Includes:

  (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  (2)  The providing of or failure to provide warnings or instructions.

    c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22.  **"Your work":**

a.  Means:

  (1)  Work or operations performed by you or on your behalf; and

  (2)  Materials, parts or equipment furnished in connection with such work or operations.

b.  Includes:

  (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  (2)  The providing of or failure to provide warnings or instructions.

**All terms and conditions of this policy apply unless modified by this endorsement.**

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

INTERLINE
LI 00 21 (01-01)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (BROAD FORM)

All Coverage Parts included in this policy that provide Liability Coverage are subject to the following exclusion.

A.  This insurance does not apply:

1.  Under any Liability Coverage, to "bodily injury" or "property damage":

a.  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

1)  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

2)  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

a.  The "nuclear material":

1)  Is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"; or

2)  Has been discharged or dispersed therefrom;

b.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

c.  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

B.  As used in this endorsement:

1.  **"Hazardous properties"** includes radioactive, toxic or explosive properties.

2.  **"Nuclear material"** means "source material", "special nuclear material" or "by-product material".

3.  **"Source material", "special nuclear material",** and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4.  **"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

5.  **"Waste"** means any waste material:

a.  Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of

LI 00 21 (01-01)

Page 1 of 2

INSURED COPY

uranium or thorium from any ore proc-
essed primarily for its "source mate-
rial" content; and

b.  Resulting from the operation by any
person or organization of any "nuclear
facility" included under the first two
paragraphs of the definition of "nuclear
facility".

6.  **"Nuclear facility"** means:

a.  Any "nuclear reactor";

b.  Any equipment or device designed or
used for:

1)  Separating the isotopes of ura-
nium or plutonium;

2)  Processing or utilizing "spent
fuel"; or

3)  Handling, processing or packaging
"waste";

c.  Any equipment or device used for the
processing, fabricating or alloying of

"special nuclear material" if at any
time the total amount of such material
in the custody of the "insured" at the
premises where such equipment or
device is located consists of or con-
tains more than 25 grams of plutonium
or uranium 233 or any combination
thereof, or more than 250 grams of
uranium 235;

d.  Any structure, basin, excavation,
premises or place prepared or used for
the storage or disposal of "waste";

and includes the site on which any of the
foregoing is located, all operations con-
ducted on such site and all premises used
for such operations.

7.  **"Nuclear reactor"** means any apparatus
designed or used to sustain nuclear fission
in a self-supporting chain reaction or to
contain a critical mass of fissionable mate-
rial.

8.  **"Property damage"** includes all forms of ra-
dioactive contamination of property.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

ACP BPRM3036811839                    INSURED COPY                    35    00206

BUSINESSOWNERS
PB 00 09 11 14

# PREMIER BUSINESSOWNERS
# COMMON POLICY CONDITIONS

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Five (5) days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**PB 00 09 11 14**

B. **CHANGES**

1. This policy contains all the agreements between you and us concerning the insurance afforded.

2. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.

3. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **CONCEALMENT, MISREPRESENTATION OR FRAUD**

1. This policy is void in its entirety in any case of fraud, at any time, by you or your representative as it relates to this policy.

2. This policy is also void if you, your authorized representative or any other insured, at any time, conceal or misrepresent any material fact, or violate any material warranty, concerning:

   a. This policy, including your application for this policy;

   b. The Covered Property;

   c. Your interest in the Covered Property; or

   d. A claim under this policy.

3. We also have the right to rescind this policy based upon any other grounds provided by law.

D. **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy or to any claim arising under this policy at any time during the policy period and up to three years afterward.

E. **INSPECTIONS AND SURVEYS**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

F. **INSURANCE UNDER TWO OR MORE COVERAGES OF THIS POLICY**

If two or more of this policy's coverages apply to the same injury, loss or damage, we will not pay more than the actual amount of the injury, loss or damage, up to the highest applicable Limit of Insurance under any one coverage.

G. **LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

H. **OTHER INSURANCE**

1. Under any property coverage provided by this policy, if there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. Under any liability coverage provided by this policy,

   a. If, for injury or loss we cover, there is other valid and collectible insurance available to any insured under another policy:

      (1) Issued by another insurer, or if there is self insurance or similar risk retention that applies to a loss covered by this policy, then this insurance provided by us shall be excess over such other insurance; or

      (2) Issued by us or any of our affiliate companies, that applies to a loss covered by this policy, then only the highest applicable Limit of Insurance shall apply to such loss. This condition does not apply to any policy issued by us that is designed to provide Excess or Umbrella liability insurance.

**Page 2 of 4**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **PB 00 09 11 14**

ACP BPRM3036811839                                    **INSURED COPY**                                    35        00208

b.  This insurance, if applicable, is also excess, whether that other insurance is primary, excess, contingent or provided on any other basis:

(1)  Over any applicable property insurance or other insurance that insures for direct physical loss or damage;

(2)  Over any valid and collectible insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured; or

(3)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. under Section I. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Liability Coverage Form.

c.  When this insurance is excess, we will have no duty under the liability coverage provided by this policy to defend any insured against any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to any insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

d.  **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**I.  PREMIUMS**

1.  The first Named Insured shown in the Declarations:

a.  Is responsible for the payment of all premiums; and

b.  Will be the payee for any return premiums we pay.

2.  The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3.  Undeclared exposures or changes in your business operation and acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules in effect at the inception of such policy.

**J.  PREMIUM AUDIT**

1.  We have the right but are not obligated to audit this policy. The first Named Insured must keep records of the information we need for premium computation, and send us copies of those records at such times as we may request.

2.  If we do audit your policy, at the close of that audit period, we will compute the earned premium for that period and the final premium due based upon your actual exposures.

3.  We will send notice to the first Named Insured after the audit has been completed. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

PB 00 09 11 14

K.  **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

1.  **Applicable to Businessowners Property Coverage:**

    If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    a.  Prior to a loss to your Covered Property.

    b.  After a loss to your Covered Property only if, at time of loss, that party is one of the following:

        (1)  Someone insured by this insurance;

        (2)  A business firm:

            (a)  Owned or controlled by you; or

            (b)  That owns or controls you; or

        (3)  Your tenant, but only with our written consent.

    You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

    This will not restrict your insurance.

2.  **Applicable to Businessowners Liability Coverage:**

    If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Payments Coverage.

    HOWEVER, in the event of any payment under this policy, we waive our right of recovery or subrogation against any person or organization with respect to which you have waived your right of recovery or subrogation in writing and prior to a loss.

L.  **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

1.  Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

2.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**Page 4 of 4**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **PB 00 09 11 14**

ACP BPRM3036811839    INSURED COPY    35    00210

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB 04 12 (01-01)**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of the ownership, maintenance or use of those premises that are shown in the Declarations, and your operations necessary or incidental to those premises.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985

**PB 04 12 (01-01)**

ACP BPRM3036811839                INSURED COPY                **35**    00211

BUSINESSOWNERS
PB 05 23 07 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

**BUSINESSOWNERS**
**PB 05 88 04 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA - LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

## A. AMENDMENTS TO THE LIABILITY COVERAGE FORM

1. In Section I. COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusion is added:

   This insurance, including any duty we have to defend "suits", does not apply to:

   **Fungi or Bacteria Bodily Injury**

   "Bodily Injury" arising out of:

   a. A "fungi or bacteria incident"; or

   b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   HOWEVER, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, "your product" intended for human or animal consumption.

2. In Section I. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusions are added:

   This insurance, including any duty we have to defend "suits", does not apply to:

   **Fungi or Bacteria**

   "Personal and advertising injury" which would not have occurred, in whole or in part, but for:

   a. a "fungi or bacteria incident"; or

   b. Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

3. Coverage provided by this insurance for "property damage", arising out of a "fungi or bacteria incident", is subject to the Fungi And Bacteria Property Damage Aggregate Limit as described in Paragraph 4. of this endorsement.

4. The following are added to Section III. LIMITS OF INSURANCE AND DEDUCTIBLE:

   1. The Fungi And Bacteria Property Damage Aggregate Limit of $50,000 is the most we will pay for all "property damage" arising out of a "fungi or bacteria incident".

   2. Paragraphs 5. Each Occurrence Limit of Insurance and 6. Tenants Property Damage Legal Liability Limit of Insurance continue to apply to "property damage" arising out of a "fungi or bacteria incident" but only if, and to the extent that, limits are available under the Fungi And Bacteria Liability Aggregate Limit.

## B. ADDITIONAL DEFINITIONS

The following definitions are added to the LIABILITY COVERAGE FORM, under Section V. DEFINITIONS.:

1. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

2. **"Fungi or bacteria incident"** means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**All terms and conditions of this policy apply unless modified by this endorsement.**

ACP BPRM3036811839                                          INSURED COPY                                          35     00213

BUSINESSOWNERS
PB 15 04 11 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A. In Section 1. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

1. Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

2. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph 1. or 2. above.

However, unless Paragraph 1. above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

B. In Section 1. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

BUSINESSOWNERS
PB 29 98 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF CONSUMER PROTECTION STATUTES

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A.  In Section 1. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY under of Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**VIOLATION OF CONSUMER PROTECTION STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
3.  The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or
4.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA, that addresses, prohibits or limits the electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

B.  In Section 1. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**VIOLATION OF CONSUMER PROTECTION STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
3.  The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or
4.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA, that addresses, prohibits or limits the electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**PB 29 98 09 08**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 1**

ACP BPRM3036811839                                    INSURED COPY                                    35      00215

**BUSINESSOWNERS**
**PB 59 10 12 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – DIMINISHED VALUE EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

A.   In Section B. EXCLUSIONS, under paragraph 2., the following exclusion is added:

**Diminution of Values**
We will not pay for loss or damage caused by or resulting from diminution in value.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**PB 59 10 12 13**       Includes copyrighted material of Insurance Services Office, Inc., with its permission       **Page 1 of 1**

ACP BPRM3036811839                         **INSURED COPY**                              35    00216

**BUSINESSOWNERS**
**PB 63 07 03 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY AMENDMENT - CUSTOMER FUELING

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

In Section I. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, under exclusion f. Pollution, the following paragraph is added to 1) a):

(iv)   "Bodily injury" to your customers or "property damage" to your customers' personal property arising out of malfunctioning fuel dispensing equipment.

**All terms and conditions of this policy apply unless modified by this endorsement.**

BUSINESSOWNERS
PB 90 10 05 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS
PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

## A. CANCELLATION

In the COMMON POLICY CONDITIONS, under Condition A. CANCELLATION paragraphs 1. and 5. are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   a. If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   b. If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

   (1) 10 days from the date of mailing or delivering our notice, or

   (2) The effective date of cancellation stated in the first Named Insured's notice to us.

5. **Premium Refund**

   a. If this policy is cancelled, we will send the first Named Insured any premium refund due.

   b. If we cancel, the refund will be pro rata, except as provided in c. below.

   c. If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   d. If the first Named Insured cancels, the refund may be less than pro rata.

   e. The cancellation will be effective even if we have not made or offered a refund.

B. In the COMMON POLICY CONDITIONS, under Condition A. CANCELLATION, the following is added and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then we will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us.

Except as applicable as described in Paragraph C. or D. below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect

PB 90 10 05 17   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   Page 1 of 3

ACP BPRM3036811839   INSURED COPY   35   00218

**PB 90 10 05 17**

less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

C. The following provisions apply to insurance covering residential real property only if the Named Insured is a natural person.

In the COMMON POLICY CONDITIONS, under Condition A. CANCELLATION, the following is added and supersedes any other provisions to the contrary except as applicable as described in Paragraph D.:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium, whether payable to us or to our agent;

   b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   d. Upon violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 45 days before the effective date of cancellation if we cancel for any of the reasons listed in b., c. or d. above.

D. In the COMMON POLICY CONDITIONS, under Condition A. CANCELLATION, with respect to a policy that is written to permit an audit, the following is added:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

E. In the COMMON POLICY CONDITIONS, under Condition C. CONCEALMENT, MISREPRESENTATION OR FRAUD paragraphs 1. through 3. are replaced by the following:

1. This policy is canceled in its entirety in any case of fraud, at any time, by you or your representative as it relates to this policy.

2. This policy is also canceled if you, your authorized representative or any other insured, at any time, conceal or misrepresent any material fact, or violate any material warranty, concerning:

   a. This policy, including your application for this policy;

   b. The Covered Property;

   c. Your interest in the Covered Property; or

   d. A claim under this policy.

3. We also have the right to rescind this policy based upon any other grounds provided by law.

F. **AMENDMENTS TO THE PREMIER BUSINESS-OWNERS PROPERTY COVERAGE FORM**

Under Section B. EXCLUSIONS, the following exclusion is added to paragraph 2.:

We will also not pay for loss or damage arising out of any act committed:

1. By or at the direction of any insured; and

2. With the intent to cause a loss.

HOWEVER, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

Page 2 of 3   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   PB 90 10 05 17

ACP BPRM3036811839   INSURED COPY   35   00219

PB 90 10 05 17

a. Is otherwise covered under this Policy; and

b. Arose out of an act of family violence by an insured, against whom a family violence complaint is brought for such act.

If we pay a claim to such innocent co-insured, our payment is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

G. In the PROPERTY LOSS CONDITIONS, paragraph 4. Legal Action Against Us, is replaced with:

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

## CONDOMINIUM OR TOWNHOUSE ASSOCIATION AMENDMENTS

If you are a Condominium or Townhouse Association, the following amendments also apply to you:

H. Under the CONDOMINIUM ASSOCIATION COVERAGE endorsement, form PB1701, paragraph C. is replaced by the following:

C. Under the PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM, the following is added to Section II. Who Is An Insured:

7. All agents of the condominium association.

8 All unit-owners and other persons entitled to occupy any unit or other portion of the condominium but only with respect to liability arising out of, or in connection with, the use, ownership, maintenance or repair of the common elements or other portion of the condominium which the association has the responsibility to maintain.

I. **AMENDMENTS TO THE DIRECTORS AND OFFICERS LIABILITY (COOPERATIVES OR CONDOMINIUMS ENDORSEMENTS**

1. If the Directors and Officers Liability (Cooperatives or Condominiums) Endorsement, form PB4100, is a part of this policy, paragraph A.4.i. is removed.

2. If the Directors and Officers Liability (Cooperatives or Condominiums) With Non-Monetary Relief Endorsement, form PB4151 is a part of this policy, paragraph A.4.h. is removed.

**All terms and conditions of this policy apply unless modified by this endorsement.**

ACP BPRM3036811839                                    INSURED COPY                                    35      00220

**Nationwide®**
Is on your side

**NATIONWIDE MUTUAL INSURANCE CO**

### CHANGE OF DECLARATIONS ENDORSEMENT - PLEASE READ CAREFULLY.

| POLICY NUMBER   ACP  BPRM  3036811839 | PREMIER BUSINESSOWNERS POLICY |
|---|---|

NAMED INSURED: **MSJ REX HOLDINGS LLC - DBA**
              **SHELL FOOD MART**

MAILING ADDRESS: **2335 SUGARLOAF CLUB DR**
                    **DULUTH, GA   30097-7404**

| AGENT NAME: Falcon Insurance Inc | 10  09963 | NO CHARGE $ | .00 |
|---|---|---|---|
| AGENT ADDRESS: FOREST PARK GA   30297 | 001 | | |

| POLICY PERIOD: FROM   **09-11-17**   TO   **09-11-18**   12:01 A.M. Standard Time |
|---|
| EFFECTIVE DATE OF CHANGE:   **10-24-17**   12:01 A.M. Standard Time |

TOTAL PREMIUM  $      .00

**NOT A STATEMENT - YOUR BILLING WILL FOLLOW**

PREMIUM

```
************************ MORTGAGEE OR LOSS PAYEE ********************

ADDED    ADDITIONAL INTEREST
         FIDELITY BANK ISAOA ATIMA
         PO BOX 105075, ATLANTA, GA, 30348-5075


         LOCATION 001  BUILDING 001  INTEREST NO: 001 - MORTGAGEE
```

P88114 (01-01) 02

# EXHIBIT B



PREMIER CLAIMS LLC
Page 1 of 1

| | |
|---|---|
| Date prepared | July 30, 2019 |
| Claim number | 714145-GI |
| Policy number | ACP BPRM3036811839 |
| Questions? | Contact Claims Associate |
| | Bryan S. Crouch |
| | CROUCHB@nationwide.com |
| | Phone 614-435-8192 |
| | Fax 866-741-0771 |

PREMIER CLAIMS LLC
C/O MSJ HOLDINGS LLC DBA SHELL FOOD MART
120 Regency Parkway
Suite 115
OMAHA, NE  68114-4396

## Claim details

| | |
|---|---|
| Insurer: | Nationwide Mutual Insurance Company |
| Policyholder: | MSJ REX HOLDINGS LLC DBA SHELL FOOD MART |
| Claim number: | 714145-GI |
| Loss date: | March 19, 2018 |
| Loss location: | 5969 HIGHWAY 42, REX, GA |

Dear PREMIER CLAIMS LLC ,

We appreciate your business and your continued confidence in our ability to help protect what's important to you.

The check in payment for your damaged property is included with this letter. This represents full payment of our estimated repairs to or replacement of your property.

Please review the estimate of the repairs needed to restore your property. Most contractors experienced in this type of restoration work should be able to complete the work specified for the prices listed in the estimate.

You are free to choose your own contractor. However, if you select a contractor who charges more than the amount of our estimate, without our approval, you will be responsible for the charges in excess of our estimate. We urge you to bring any concerns or discrepancies to our attention prior to signing a contract for or beginning repairs or replacement to your property. You should select an experienced contractor as soon as possible so the repairs can begin. Please give the contractor a copy of this estimate so that he/she may call me with any questions.

Thank you for choosing us for your important insurance protection. If you have any questions or concerns, please contact me at 614-435-8192 or CROUCHB@nationwide.com.

Sincerely,

Bryan S. Crouch
Nationwide Mutual Insurance Company
P.O. Box 182068
Columbus, OH 43218-2068



 **Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

| | |
|---|---|
| Insured: | MSJ REX HOLDINGS LLC - DBA |
| Property: | 5969 HIGHWAY 42 |
| | REX, GA 30273-1075 |
| Home: | 2335 SUGARLOAF CLUB DR |
| | DULUTH, GA 30097-7404 |

| | | | |
|---|---|---|---|
| Claim Rep.: | BRYAN S CROUCH | Business: | (803) 457-3667 |
| Business: | PO BOX 182068 | E-mail: | crouchb@nationwide.com |
| | COLUMBUS, OH 43218-2068 | | |

Estimator:  Chris McCook

**Claim Number:** 714145-GI     **Policy Number:** ACP BPRM3036811839     **Type of Loss:** Wind Damage

| | | | |
|---|---|---|---|
| Date Contacted: | 3/12/2019 11:40 AM | | |
| Date of Loss: | 3/19/2018 2:00 AM | Date Received: | 3/11/2019 2:00 AM |
| Date Inspected: | | Date Entered: | 3/12/2019 10:23 AM |
| Date Est. Completed: | 7/30/2019 3:00 PM | | |

| | |
|---|---|
| Price List: | GAAT8X_MAR19 |
| | Restoration/Service/Remodel |
| Estimate: | MSJ_REX_HOLDINGS_LLC |

0689800015032





**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

Dear Valued Customer,

Please refer to the attached itemized estimate. The estimate contains our valuation of the damages for the reported loss and was prepared using usual and customary prices for your geographic area. If you choose to hire a contractor or vendor to make repairs, please provide this estimate to them.

Please note that if your mortgage company is included on your claim payment check, contact the mortgage company to discuss how to handle the proceeds of this payment.

If you, your contractor, or vendor determine that there are additional building fees and/or permits associated with the estimated repairs that are not included in this estimate, please contact me immediately so that I may review and make a determination as to the appropriate payment.

If you discover any additional damage to your property, please immediately contact me, either personally or through your contractor/vendor. We may need to re-inspect your property before authorization of supplemental payment. Please do not destroy or discard any of the damaged items until we have had an opportunity to inspect the damages and have reached an agreement with you on any supplemental cost.

Nationwide may also request to re-inspect your property, at your convenience, as part of our commitment to quality and customer service.

Thank you for allowing Nationwide Mutual Insurance Company to serve your insurance needs. Please contact me at the numbers listed above if you have any questions regarding this estimate or any other matter pertaining to your claim.



**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

MSJ_REX_HOLDINGS_LLC
MSJ_REX_HOLDINGS_LL1

### HVAC

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. HVAC Technician - per hour | 6.00 HR | 110.00 | 0.00 | 660.00 | (0.00) | 660.00 |
| Straighten condenser coil fins on 3 units; Grandaire Model #: GR4GA-048C096C Trane Model #: TCC060F300BC Grandaire Model #: GR-024K072C | | | | | | |
| 2. HVAC | 1.00 EA | 3,565.54 | 221.44 | 3,786.98 | (0.00) | 3,786.98 |
| suggested repair by HVACi | | | | | | |
| Totals: HVAC | | | 221.44 | 4,446.98 | 0.00 | 4,446.98 |

### Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 3. Exhaust cap - through flat roof | 2.00 EA | 96.58 | 11.27 | 204.43 | (43.48) | 160.95 |
| For the two damaged exhaust vent caps. The remaining vents are unharmed by wind or hail | | | | | | |
| Totals: Roof | | | 11.27 | 204.43 | 43.48 | 160.95 |

### Debris Removal

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 4. Haul debris - per pickup truck load - including dump fees | 0.50 EA | 145.30 | 0.00 | 72.65 | (0.00) | 72.65 |
| Totals: Debris Removal | | | 0.00 | 72.65 | 0.00 | 72.65 |
| Total: MSJ_REX_HOLDINGS_LL1 | | | 232.71 | 4,724.06 | 43.48 | 4,680.58 |
| Line Item Totals: MSJ_REX_HOLDINGS_LLC | | | 232.71 | 4,724.06 | 43.48 | 4,680.58 |



0689800001504 9



**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| | | | | | |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 1,330.27 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 13,129.74 | Surface Area | 131.30 | Number of Squares | 772.16 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

### Summary for Building 1

| | |
|---|---:|
| Line Item Total | 4,491.35 |
| Material Sales Tax | 232.71 |
| **Replacement Cost Value** | **$4,724.06** |
| Less Depreciation | (43.48) |
| **Actual Cash Value** | **$4,680.58** |
| Less Deductible | (2,500.00) |
| **Net Claim** | **$2,180.58** |
| Total Recoverable Depreciation | 43.48 |
| **Net Claim if Depreciation is Recovered** | **$2,224.06** |

Chris McCook



0689800015056

MSJ_REX_HOLDINGS_LLC                7/30/2019       Page: 5



**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

## Recap of Taxes

|  | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 232.71 | 0.00 | 0.00 |
| Total | 232.71 | 0.00 | 0.00 |



**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

## Recap by Room

Estimate: MSJ_REX_HOLDINGS_LLC

Area: MSJ_REX_HOLDINGS_LL1

| | | |
|---|---:|---:|
| HVAC | 4,225.54 | 94.08% |
| Roof | 193.16 | 4.30% |
| Debris Removal | 72.65 | 1.62% |
| Area Subtotal: MSJ_REX_HOLDINGS_LL1 | 4,491.35 | 100.00% |
| Subtotal of Areas | 4,491.35 | 100.00% |
| Total | 4,491.35 | 100.00% |





**Nationwide Mutual Insurance Company**

Bryan S Crouch
Commercial Claims Specialist II
One Nationwide Gateway, Dept 5582
Des Moines, IA 50391-5582
crouchb@nationwide.com

## Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---|---|---|
| GENERAL DEMOLITION | 72.65 | | 72.65 |
| HEAT, VENT & AIR CONDITIONING | 4,225.54 | | 4,225.54 |
| ROOFING | 193.16 | 40.26 | 152.90 |
| Subtotal | 4,491.35 | 40.26 | 4,451.09 |
| Material Sales Tax | 232.71 | 3.22 | 229.49 |
| Total | 4,724.06 | 43.48 | 4,680.58 |

# DAMAGE ASSESSMENT - *POLICYHOLDER COPY*



HVAC*i*
JUST THE FACTS

07/30/2019                                                HVACi Assessment #        19-239804

Nationwide Insurance
100 Old Cherokee Road suite F
Lexington, SC 29072

0689800015070



| **Attention:** | Bryan Crouch |
| **Report Submitted VIA:** | crouchb@nationwide.com |

| **Claim #** | 714145GI |
| **Date of Loss:** | 03/19/2019 |
| **Insured:** | MSJ Rex Holdings |
| **Loss Address:** | 5969 Highway 42 |
| | Rex, GA 30273 |
| **Phone:** | (877) 219-0049 |

## :: EVALUATION SUMMARY

| **HVACi Evaluation Findings:** | **4 of 4 Systems Damaged** |
| **Recommendation:** | **Repair 4 Systems** |
| **Primary Cause of Loss:** | **Hail** |
| **Secondary Cause of Loss:** | **Wear and Tear** |

| | | |
|---|---|---|
| Recommended Settlement (Including Sales Tax) | $ | 4,446.98 |
| Applied Depreciation | $ | 2,242.11 |
| Recommended ACV Settlement (Including Sales Tax) | $ | 2,204.87 |

Our calculation of applicable sales tax is provided for general information purposes only. Any final determination of sales tax applicability should be

888.407.5224                                                                    hvaci.com

HVACI does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.

**DAMAGE ASSESSMENT - *POLICYHOLDER COPY***
**Report Date:** 07/30/2019
**Claim #** 714145GI
**HVACi File #** 19-239804



made by the adjuster after consultation with their internal tax professionals.

## CAUSE OF LOSS

Based on the information collected during our onsite investigation, it is the opinion of HVAC Investigators that **the primary cause of loss to the 4 HVAC systems is Hail.**

At the time of our onsite assessment, system #1 was already disconnected from power and moved from its original location. Due to these circumstances, the system could not be energized to perform operational testing of the equipment. Testing revealed the compressor diminished in functionality over its lifetime and tested outside of manufacturer specifications. Parts were missing from the interior of the unit and significant rust was present throughout. Also, the system sustained minor surface hail damages to its condenser coil from the hail impacts. The condenser coil was not punctured in any areas and the coil fins were not torn. No other components showed any visual or measured signs of hail damage.

The findings of our onsite inspection indicate that HVAC systems #2 and 4 sustained minor hail related damages. The systems sustained minor surface damages to their condenser coils from the hail impacts. The condenser coils were not punctured in any areas and the coil fins were not torn. No other components showed any visual or measured signs of hail damage. Rust was evident throughout the interior of these units as well from wear and tear over time.

HVAC system #3 sustained moderate hail related damages. The system sustained surface damages to its condenser coil from the hail impacts. The condenser coil was not punctured in any areas, however, due to the depth of the impacts, the fins cannot be straightened without resulting in additional damage. No other components showed any visual or measured signs of hail damage. Rust was evident throughout the interior of this system as well from wear and tear over time.

## DETERMINATIONS

HVACi's onsite investigation indicates that the following components and/or actions are required for repair of the HVAC systems:

- **Professional Labor to Straighten Condenser Coil Fins (3)**
- **Trane, 5 Ton, R-22 Condenser Coil (Part # COL09499)**
- **Flush Kit**
- **Freight**
- **Evacuate, Recover, and Reclaim Refrigerant Per EPA Guidelines**
- **Install Filter Drier**

HVACi does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.



**DAMAGE ASSESSMENT - *POLICYHOLDER COPY***

Report Date: 07/30/2019
Claim #: 714145GI
HVACi File #: 19-239804

- Nitrogen Pressure Test / Vacuum Pump
- R-22 Refrigerant
- Recharge Refrigerant to Manufacturer Specifications
- Welding / Brazing / Alloy
- Post Repair System Start Up
- Crane Fee
- Professional Labor for Repairs

Making the aforementioned repairs to the HVAC systems will restore pre-loss condition. The repair estimate is based on current parts availability and local market pricing. System efficiency, size, model, and locally available brands all play a significant role in determining the repair recommendations.



HVACi does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.

**DAMAGE ASSESSMENT -** *POLICYHOLDER COPY*
Report Date:          07/30/2019
Claim #:              714145GI
HVACi File #:         19-239804



## ⠿ EXISTING HVAC EQUIPMENT DEMOGRAPHIC INFORMATION

| # | BRAND | MODEL # | SERIAL # | CAUSE OF LOSS | AGE | TON / BTU | SYSTEM TYPE |
|---|-------|---------|----------|---------------|-----|-----------|-------------|
| 001 | Grandaire | GR4GA-048C096C | UNAVAILABLE | Hail | 2000 | 4.0 | Package Unit |
| 002 | Trane | TCC060F300BC | P125X8A2H | Hail | 1999 | 5.0 | Package Unit |
| 003 | Trane | TCC060F300BC | N4643GU2H | Hail | 1998 | 5.0 | Package Unit |
| 004 | Grandaire | GR-024K072C | UNAVAILABLE | Hail | 2000 | 2.0 | Package Unit |

HVACI does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.

**DAMAGE ASSESSMENT -** *POLICYHOLDER COPY*



| Report Date: | 07/30/2019 |
| Claim #: | 714145GI |
| HVAC/ File # | 19-239804 |

## ⋮⋮ RECOMMENDED SETTLEMENT BREAKDOWN

The following section provides a breakdown of our recommended settlement by individual system. If coverage is afforded, the actions listed below will restore your insured to pre-loss condition:



System #: 001    Brand: Grandaire    Model #: GR4GA-048C096C    Ton/BTU: 4.0    Age: 2000

| DESCRIPTION | PARTS COST INCLUDING TAX | LABOR HOURS | LABOR COST | LINE ITEM TOTAL INCLUDING TAX |
|---|---|---|---|---|
| Professional Labor to Straighten Condenser Coil Fins | $   0.00 | 2.00 | $   220.00 | $   220.00 |
| System Total w/Tax: | $   0.00 | 2.00 | $   220.00 | $   220.00 |

System #: 002    Brand: Trane    Model #: TCC060F300BC    Ton/BTU: 5.0    Age: 1999

| DESCRIPTION | PARTS COST INCLUDING TAX | LABOR HOURS | LABOR COST | LINE ITEM TOTAL INCLUDING TAX |
|---|---|---|---|---|
| Professional Labor to Straighten Condenser Coil Fins | $   0.00 | 2.00 | $   220.00 | $   220.00 |
| System Total w/Tax: | $   0.00 | 2.00 | $   220.00 | $   220.00 |

**Repair Costs**

System #: 003    Brand: Trane    Model #: TCC060F300BC    Ton/BTU: 5.0    Age: 1998

| DESCRIPTION | PARTS COST INCLUDING TAX | LABOR HOURS | LABOR COST | LINE ITEM TOTAL INCLUDING TAX |
|---|---|---|---|---|
| Trane, 5 Ton, R-22 Condenser Coil (Part # COL09499) | $   2,031.52 | 2.00 | $   220.00 | $   2,251.52 |
| Flush Kit | $   140.40 | 0.50 | $   55.00 | $   195.40 |
| Freight | $   108.00 | 0.00 | $   0.00 | $   108.00 |
| Evacuate, Recover, and Reclaim Refrigerant Per EPA Guidelines | $   0.00 | 1.00 | $   110.00 | $   110.00 |
| Install Filter Drier | $   56.16 | 0.50 | $   55.00 | $   111.16 |
| Nitrogen Pressure Test / Vacuum Pump | $   0.00 | 1.00 | $   110.00 | $   110.00 |
| R-22 Refrigerant | $   59.40 | 0.00 | $   0.00 | $   59.40 |
| Recharge Refrigerant to Manufacturer Specifications | $   0.00 | 1.25 | $   137.50 | $   137.50 |
| Welding / Brazing / Alloy | $   54.00 | 0.50 | $   55.00 | $   109.00 |
| Post Repair System Start Up | $   0.00 | 0.50 | $   55.00 | $   55.00 |
| Crane Fee | $   540.00 | 0.00 | $   0.00 | $   540.00 |
| System Total w/Tax: | $   2,989.48 | 7.25 | $   797.50 | $   3,786.98 |

System #: 004    Brand: Grandaire    Model #: GR-024K072C    Ton/BTU: 2.0    Age: 2000

| DESCRIPTION | PARTS COST INCLUDING TAX | LABOR HOURS | LABOR COST | LINE ITEM TOTAL INCLUDING TAX |
|---|---|---|---|---|
| Professional Labor to Straighten Condenser Coil Fins | $   0.00 | 2.00 | $   220.00 | $   220.00 |
| System Total w/Tax: | $   0.00 | 2.00 | $   220.00 | $   220.00 |

HVACi does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.

**DAMAGE ASSESSMENT - *POLICYHOLDER COPY***

Report Date:     07/30/2019
Claim #          714145GI
HVAC/ File #     19-239804



| | | |
|---|---|---|
| Parts Sub Total w/o Tax: | $ | 2,768.04 |
| Labor Sub Total w/o Tax: | $ | 1,457.50 |
| Sales Tax: | $ | 221.44 |
| Total Recommended Settlement: | $ | 4,446.98 |

| | | |
|---|---|---|
| State Sales Tax Rate: | | 8.00% |
| Technician Rate Per Hour: | $ | 110.00 |

Please note that the above Recommended Settlement Breakdown Includes:

• All Miscellaneous Parts and Materials for Repair of HVAC Equipment
• Crane Fees Where Applicable
• Disposal of Existing Equipment Net of Salvage Value, If Any
• System Start-Up & Performance Checks

The above Recommended Settlement Breakdown does not include cutting, patching, painting, roofing or responsibilities required from a general contractor.

Repair and replacement costs are based on average market rates at the time this report was prepared. Market prices can, and often do, substantially change over time, and therefore these costs are only valid for 30 days from the date of report issuance.

Our calculation of applicable sales tax is provided for general information purposes only. Any final determination of sales tax applicability should be made by the adjuster after consultation with their internal tax professionals.

888.407.5224                                                                                        hvaci.com

HVACi does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.
Page 6 of 7

**DAMAGE ASSESSMENT -** *POLICYHOLDER COPY*

Report Date:      07/30/2019
Claim #:          714145GI
HVACi File #:     19-239804



## ⠿ DEPRECIATION SCHEDULE

The industry accepted useful life for HVAC equipment is 15 years.  HVACi applies 6.67% depreciation per year of service to determine Actual Cash Value.  A 25% residual value "cap" is applied to systems whose calculated depreciation is greater than 75%.  Labor is not depreciated in ACV calculations.

Depreciation is calculated based on the useful life of the equipment and its general condition without reference to legal requirements of the local jurisdiction. Please refer to the requirements of the loss location jurisdiction and your company guidelines in applying depreciation.



| SYSTEM # | DOM | AGE | DEPRECIATION RATE | RECOMMENDED SETTLEMENT INCLUDING TAX | APPLIED DEPRECIATION | ACV | 25% CAP VALUE |
|----------|------|-----|-------------------|-------------------|---------------------|-----|---------------|
| 001 | 2000 | 19 | 6.67% | $      220.00 | $        0.00 | $      220.00 | $      220.00 |
| 002 | 1999 | 20 | 6.67% | $      220.00 | $        0.00 | $      220.00 | $      220.00 |
| 003 | 1998 | 21 | 6.67% | $    3,786.98 | $    2,242.11 | $    1,544.87 | $    1,544.87 |
| 004 | 2000 | 19 | 6.67% | $      220.00 | $        0.00 | $      220.00 | $      220.00 |

Repair and replacement costs are based on average market rates at the time this report was prepared. Market prices can, and often do, substantially change over time, and therefore these prices are only valid for 30 days from the date of report issuance.

888.407.5224                                                                                    hvaci.com

HVACI does not interpret policy language or whether any, or all coverage may apply. We therefore defer all coverage determinations to your organization.

# EXHIBIT C


**HUGGINS** LAW FIRM

Michael D. Turner, Esq.
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

December 13, 2019

Mr. Bryan Crouch                          **Sent Via email:**
Nationwide Mutual Insurance Company        crouchb@nationwide.com
P.O. Box 182068
Columbus, OH 43218

Re:    Property Owner:    MSJ Rex Holdings LLC DBA Shell Food Mart
       Policy Number:     ACP BPRM3036811839
       Claim Number:      714145-GI
       Date of Loss:      3/19/18

Dear Mr. Crouch:

I have been retained by MSJ Rex Holdings LLC DBA Shell Food Mart ("MSJ Rex Holdings") to represent it regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, endorsements, and any estimates.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why Nationwide Mutual Insurance Company ("Nationwide") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced MSJ Rex Holdings to retain my legal services in order to fairly settle its claim. It is our belief that Nationwide has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34, and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, as per the enclosed spreadsheets of damages to MSJ Rex Holdings' property we are hereby making formal demand that you settle the above claim for the sum of **$284,568.00.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a law suit containing a claim for breach of contract and bad faith seeking all

To:  Nationwide Mutual Insurance Company
Client: MSJ Rex Holdings LLC DBA Shell Food Mart
December 13, 2019
Page **2** of **2**

compensation allowed by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.

      This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6.  If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation.  Otherwise, it will be assumed that you agree that a proper demand was made.

      The purpose of this correspondence is to encourage Nationwide to resolve MSJ Rex Holdings' claim in a fair and equitable manner to avoid litigation.  In the event that you fail to respond to this letter with an offer of settlement that is acceptable to MSJ Rex Holdings , we will have no alternative but to recommend to MSJ Rex Holdings that a lawsuit be filed against you.

      In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter.  Any check issued should list Huggins Law Firm, LLC.

      I look forward to working with you to resolve this matter quickly and amicably.  Please feel free to contact me should you have any questions in regards to this formal 60-day demand.

Sincerely,

J. Remington Huggins, Esq.
Attorney at Law

JRH
Enclosures

### Premier-Claims



120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

| | | | |
|---|---|---|---|
| Insured: | MSJ Rex Holdings LLC | | |
| Property: | 5969 Hwy 42 | | |
| | Rex, GA 30273-1075 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Premier Claims | Business: | (877) 219-0049 |
| Estimator: | Premier Claims | Business: | (877) 219-0049 |

**Claim Number:** 714145-GI          **Policy Number:** ACPBPRM3036811839          **Type of Loss:** Wind Damage

| | | | |
|---|---|---|---|
| Date of Loss: | 3/19/2018 | Date Received: | |
| Date Inspected: | | Date Entered: | 5/2/2019 4:42 PM |

| | |
|---|---|
| Price List: | GAAT8X_MAY19 |
| | Restoration/Service/Remodel |
| Estimate: | MSJ_REX_HOLDINGS_1 |

This estimate was created in order to return the insured to a pre-loss condition. Premier Claims reserves the right to make any changes to this estimate at any time during our representation of the insured. Should you have any questions or concerns, please direct all communication to the Premier Claims Office.



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

### MSJ_REX_HOLDINGS_1

#### General

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1.  Temporary toilet (per month) | 1.00 MO | 106.15 | 0.00 | 21.24 | 127.39 | (0.00) | 127.39 |
| 2.  Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| 3.  Residential Supervision / Project Management - per hour | 4.00 HR | 56.52 | 0.00 | 45.22 | 271.30 | (0.00) | 271.30 |
| 4.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 145.30 | 0.00 | 29.06 | 174.36 | (0.00) | 174.36 |
| 5.  R&R Tarp - all-purpose poly - per sq ft (labor and material) | 1,000.00 SF | 0.83 | 17.60 | 169.52 | 1,017.12 | (0.00) | 1,017.12 |
| Various leaks around roof | | | | | | | |
| 6.  Boom lift - 30'-45' reach (per day) | 2.00 DA | 360.30 | 0.00 | 144.12 | 864.72 | (0.00) | 864.72 |
| 7.  Equipment Operator - per hour | 16.00 HR | 57.57 | 0.00 | 184.22 | 1,105.34 | (0.00) | 1,105.34 |
| 2 days one for each roof | | | | | | | |
| **Totals:  General** | | | **17.60** | **593.38** | **3,560.23** | **0.00** | **3,560.23** |

#### Built Up Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 8.  R&R Built-up 3 ply roofing - in place | 75.90 SQ | 355.41 | 544.48 | 5,504.02 | 33,024.12 | (0.00) | 33,024.12 |
| Accounts for parapet walls | | | | | | | |
| 9.  R&R Cap flashing | 122.00 LF | 18.39 | 105.21 | 469.76 | 2,818.55 | (0.00) | 2,818.55 |
| 10.  R&R Aluminum rake/gable edge trim - mill finish | 246.00 LF | 5.37 | 29.32 | 270.06 | 1,620.40 | (0.00) | 1,620.40 |
| 11.  R&R Aluminum sidewall/endwall flashing - mill finish | 122.00 LF | 6.58 | 26.25 | 165.82 | 994.83 | (0.00) | 994.83 |
| 12.  R&R Membrane roofing - cant strips - perlite | 182.00 LF | 3.20 | 6.55 | 117.80 | 706.75 | (0.00) | 706.75 |
| Both sides and a little in front where tilted | | | | | | | |
| 13.  R&R Flashing - pipe jack | 9.00 EA | 48.70 | 6.51 | 88.96 | 533.77 | (0.00) | 533.77 |
| 14.  R&R Exhaust cap - through flat roof | 2.00 EA | 115.64 | 11.27 | 48.52 | 291.07 | (0.00) | 291.07 |
| 15.  R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 85.39 | 2.10 | 17.50 | 104.99 | (0.00) | 104.99 |
| 16.  R&R Gravity roof ventilator - 18" | 2.00 EA | 279.88 | 32.85 | 118.52 | 711.13 | (0.00) | 711.13 |
| 17.  Digital satellite system - Detach & reset | 2.00 EA | 28.38 | 0.00 | 11.36 | 68.12 | (0.00) | 68.12 |
| 18.  Digital satellite system - alignment and calibration only | 2.00 EA | 85.15 | 0.00 | 34.06 | 204.36 | (0.00) | 204.36 |
| 19.  Heat, Vent, & Air Conditioning (open) * | 0.00 OP | | | | | | OPEN ITEM |

Bid for AC due to damages



### Premier-Claims

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

**CONTINUED - Built Up Roof**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 20.  HVAC Technician - per hour | 8.00 HR | 95.00 | 0.00 | 152.00 | 912.00 | (0.00) | 912.00 |
| To disconnect all ac unit lines for replacing roof and reset after roof replaced | | | | | | | |
| 21.  R&R Insulation - ISO board, 1 1/2" | 74.06 SQ | 256.81 | 460.65 | 3,896.00 | 23,376.00 | (0.00) | 23,376.00 |
| 22.  R&R Drip edge | 21.00 LF | 2.65 | 1.21 | 11.38 | 68.24 | (0.00) | 68.24 |
| Goes on small overhang on lower roof | | | | | | | |
| 23.  Roofer - per hour | 8.00 HR | 106.07 | 0.00 | 169.72 | 1,018.28 | (0.00) | 1,018.28 |
| Work around all openings | | | | | | | |
| 24.  Additional charge for high roof (2 stories or greater) | 75.90 SQ | 11.21 | 0.00 | 170.16 | 1,021.00 | (0.00) | 1,021.00 |
| 25.  Additional charge for high roof (2 stories or greater) | 75.90 SQ | 15.29 | 0.00 | 232.10 | 1,392.61 | (0.00) | 1,392.61 |
| **Totals:  Built Up Roof** | | | **1,226.40** | **11,477.74** | **68,866.22** | **0.00** | **68,866.22** |

### Metal Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 26.  R&R Canopy cover - Commercial | 5,020.00 SF | 33.17 | 8,220.75 | 34,946.84 | 209,680.99 | (0.00) | 209,680.99 |
| 27.  Electrician - per hour | 8.00 HR | 90.02 | 0.00 | 144.04 | 864.20 | (0.00) | 864.20 |
| To disconnect and reconnect lights for roof panel replacement | | | | | | | |
| 28.  Additional charge for high roof (2 stories or greater) | 50.20 SQ | 11.21 | 0.00 | 112.54 | 675.28 | (0.00) | 675.28 |
| 29.  Additional charge for high roof (2 stories or greater) | 50.20 SQ | 15.29 | 0.00 | 153.52 | 921.08 | (0.00) | 921.08 |
| **Totals:  Metal Roof** | | | **8,220.75** | **35,356.94** | **212,141.55** | **0.00** | **212,141.55** |
| **Line Item Totals:  MSJ_REX_HOLDINGS_1** | | | **9,464.75** | **47,428.06** | **284,568.00** | **0.00** | **284,568.00** |



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 227,675.19 |
| Material Sales Tax | 9,464.75 |
| | |
| Subtotal | 237,139.94 |
| Overhead | 23,714.03 |
| Profit | 23,714.03 |
| | |
| **Replacement Cost Value** | **$284,568.00** |
| **Net Claim** | **$284,568.00** |

Premier Claims

**Premier-Claims**



120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| **Line Items** | 23,714.03 | 23,714.03 | 9,464.75 | 0.00 | 0.00 |
| **Total** | **23,714.03** | **23,714.03** | **9,464.75** | **0.00** | **0.00** |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Recap by Room

**Estimate: MSJ_REX_HOLDINGS_1**

| | | |
|---|---:|---:|
| General | 2,949.25 | 1.30% |
| Built Up Roof | 56,162.08 | 24.67% |
| Metal Roof | 168,563.86 | 74.04% |
| **Subtotal of Areas** | **227,675.19** | **100.00%** |
| **Total** | **227,675.19** | **100.00%** |



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| GENERAL DEMOLITION | 41,129.64 | 14.45% |
| ELECTRICAL | 720.16 | 0.25% |
| ELECTRICAL - SPECIAL SYSTEMS | 227.06 | 0.08% |
| HEAVY EQUIPMENT | 1,641.72 | 0.58% |
| HEAT, VENT & AIR CONDITIONING | 822.65 | 0.29% |
| LABOR ONLY | 226.08 | 0.08% |
| ROOFING | 39,162.53 | 13.76% |
| TEMPORARY REPAIRS | 876.15 | 0.31% |
| EXTERIOR STRUCTURES | 142,869.20 | 50.21% |
| O&P Items Subtotal | 227,675.19 | 80.01% |
| Material Sales Tax | 9,464.75 | 3.33% |
| Overhead | 23,714.03 | 8.33% |
| Profit | 23,714.03 | 8.33% |
| Total | 284,568.00 | 100.00% |

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| **MSJ REX HOLDINGS, LLC, d/b/a** | ) | |
| **SHELL FOOD MART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **v.** | ) | <u>**20-C-01686-S1**</u> |
| | ) | |
| **NATIONWIDE MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT</u>

Comes Now Plaintiff, MSJ Rex Holdings, LLC, d/b/a Shell Food Mart, and hereby propounds the following First Set of Interrogatories to the Defendant, Nationwide Mutual Insurance Company, to be answered separately and fully, in writing, under oath and in accordance with Rules of Civil Procedure O.C.G.A. § 9-11-33.  You are instructed to provide answers to the following interrogatories within forty-five (45) days of service of this request.

### <u>GENERAL INSTRUCTIONS</u>

1.  You are required to answer and verify the following interrogatories within forty-five (45) days of the date of service.

2.  Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3.  In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons

directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. The obligation to answer the interrogatories is intended to be of a continuing nature, and you are required by O.C.G.A. § 9-11-26 to reasonably amend your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additionally or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document" or "documents" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other communications, bulletins, magazines, publications, printed matter, photographs, computer printouts,

teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, and electronic, mechanical or electric records or representations of any kind, or which you have knowledge or which are now or were formally in your actual or constructive possession, custody or control. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

2. "Identify" shall mean:

    a.   when used to refer to a document, means to state the following:

        1.The subject of the document;

        2.The title of the document;

        3.The type of document (e.g., letter, memorandum, telegram, chart);

        4.The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

        5.The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

        6.The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

3. "Including" shall mean "including, but not limited to."

4. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of discovery request so as not to exclude any information that might be deemed outside the scope of the request by any other construction.

5. "Person" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation, public or private, or government entity.

6. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

7. "Plaintiff's" and "Policyholder" means Plaintiff's Policyholder and his/her/its employees, representative, agents, employees, servants, officers, and directors.

8. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, and each person presently or formerly acting or authorized to act on its behalf.

9. "Policy" means Policy No. ACP BPRM3036811839 issued by Nationwide Mutual Insurance Company.

10. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

11. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

12. "Loss" means the event on or around March 19, 2018, in which Policyholder suffered property damage and has consequently incurred extra expense and business income losses.

13. "Policyholder's Claim" or "Claim" shall refer to the claim made by Policyholder to Insurance Company for direct physical loss or direct physical damage to the insured property located at 5969 Highway 42, Rex, GA 30273.

14. "Possession, custody or control" includes the joint or several possession, custody or control not only by the person to whom these interrogatories are addressed, but also the joint or

several possession, custody or control by each or any other person acting or purporting to act on behalf of the person, whether as employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the wind/hail loss on or about March 19, 2018, and for each, please include:

(a) His/her name, place of employment, address, and telephone number;

(b) His/her title, license(s), and certification(s);

(c) The date his/her involvement in this claim commenced;

(d) The date his/her involvement in this claim concluded; and

(e) A description his/her involvement in this claim.

(This Interrogatory seeks the name of every employee of Defendant who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review committee or claims committee).

2.

If any individual identified in your answer to Interrogatory No. 1 is or was your employee, agent, or representative, please state whether said individual has been promoted, demoted, terminated, or transferred from March 19, 2018 to present; describe in detail the change in employment status of each such individual, including the circumstances of the person's

employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such past former employee.

3.

Describe each and every investigative step conducted by you, or by anyone on your behalf, regarding Plaintiff's insurance claim, beginning with the date and method you received notice of the subject claim.  Identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in your possession, in the course of your investigation.

4.

Please identify the individual(s) who have final authority to authorize settlement of this claim, and for each, please list their name, place of employment, position, telephone number, and email address.

5.

State with specificity any and all applicable building codes (state, county, city, or municipal) and engineering industry standards and practices for the investigation, evaluation, and repair/remediation of damages caused by wind/hail to Plaintiff's Insured Property you relied upon during your investigation of this claim, and state:

    (a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these industry standards or practices; and

    (b) Identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

    (c) If you do not have an answer to this Interrogatory, please affirmatively state that no such building codes, engineering industry standards or practices were relied upon for the investigation, evaluation, and repair/remediation of Plaintiff's damages.

6.

Identify each and every person that you expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents you furnished to the expert.

7.

If you have retained or employed an expert in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

8.

State the following concerning notice of claims and timing of payment:

(a) The date and manner in which you received notice of the claim.

(b) The date and manner in which you acknowledged receipt of the claim.

(c) The date and manner in which you commenced investigation of the claim.

(d) The date and manner in which you requested from the claimant all items, statements, and forms that you reasonably believed, at the time, would be required from the claimant.

(e) The date and manner in which you notified the claimant in writing of the acceptance or rejection of the claim.

(f) The date, amount, and reason for any insurance proceed payments you have made to the Plaintiff.

9.

Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for denying the claim.

10.

Please identify any and all written procedures or policies (including document(s) maintained in electronic form) you maintained for your internal or third party adjusters to use in connection with handling property and casualty claims in the state of Georgia arising out of the Plaintiff's damage it suffered as a result of the wind/hail event on March 19, 2018.

11.

Please state with specificity when (approximate date) and why did you anticipate litigation with respect to Plaintiff's cause of action, and state:

(a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

(b) Identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation or handling of a claim for windstorm/hail insurance benefits in the state of Georgia that you routinely generated during the course of the investigation and handling of a claim (e.g. Investigation Reports; z-records; reserve sheet; electronic claims diary; a claims review report; any team report relative to this claim) from January 1, 2018 to the present, and state whether you generated any of these documents during the course of investigating and handling Plaintiff's claim.

13.

Have any documents (including those maintained electronically) relating to the investigation or handling of Plaintiff's claim for insurance benefits been destroyed or disposed of? If so, please identify what, when and why the document was destroyed, and describe your document retention policy.

14.

Do you contend that the insured premises were damaged by any excluded peril? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

15.

Do you contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

16.

Do you contend that the Plaintiff failed to satisfy any condition, covenant, or duty of the policy in any way? If so, identify each condition, covenant, or duty of the Policy which you contend the Plaintiff failed to satisfy, and for each, state the factual and legal basis for your contention(s) that the Plaintiff has not satisfied that particular condition or duty and identify all of the documents relating to your assertion and all persons with knowledge of such facts.

17.

Do you evaluate the performance of the personnel involved in handling Plaintiff's claim (including, but not limited to, claims representative, claims adjuster, independent adjuster,

manager)? If so, state what performance measures are used for said personnel, and describe your bonus or incentive plan for said personnel.

18.

Identify any portion of the Loss, as set forth in Plaintiff's Claim that you contend is not covered by the Policy. Include in your answer the specific amounts you contend are not covered, and for each such amount, please identify all facts, including exclusions or other provisions of the Policy, supporting your contention that no coverage exists.

19.

Do you contend that the Plaintiff has failed to mitigate any damages? Unless your answer is anything other an unqualified negative, identify the factual basis for your contention that the Plaintiff has failed to mitigate. Include in your answer identification of all documents relating to your assertion and all persons with knowledge of the facts averred in your answer.

20.

Do you contend that the Plaintiff failed to cooperate with the investigation or settlement of the claim? Unless your answer is anything other than an unqualified negative, state, explain, and describe the factual and legal basis for your contention that the Plaintiff failed to cooperate with the investigation or settlement of the claim.

21.

With regards to your relationship with the Policyholder(s):

(a) When did the Policyholder(s) first obtain a policy of insurance from you?

(b) When did the Policyholder(s) first apply for a policy of insurance from you for the Insured Property? Was their application accepted? Why or why not?

(c) What underwriting documents were created in the formation of the Policyholder(s)'s original policy of insurance for the Insured Property?

(d) Did you inspect the Insured Property prior to issuing your first policy of insurance for the Insured Property? If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection. If not, please affirmatively state that no such inspection occurred.

(e) Did you inspect the Insured Property prior to renewing the Policy for the policy period at issue in this claim? If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection. If not, please affirmatively state that no such inspection occurred.

(f) Have you issued a Notice of Non-Renewal or Cancellation of the Plaintiff's Policy for the Insured Property? If so, please identify the date of such correspondence; the specific type of correspondence; your purported reasoning for said correspondence or action; and the specific facts or documents you relied upon in drafting said correspondence or action.

22.

Do you contend that the Plaintiff provided false, incomplete, or deficient information that was material to the underwriting of your Policy? If your answer is anything other than an unqualified negative, state with specificity the factual and legal basis for your contention, and identify all documents that relate to your response.

23.

Identify any and all photographs, audiotape recordings, videotape recordings, or written statements taken or obtained during the course of your investigation of the claim.  In your response, please describe in detail what each such document depicts, and state the date when each such photograph, statement, or recording was taken, made, or obtained.

24.

With regards to your Answer and Affirmative Defenses to Plaintiff's Complaint:

(a) State the good faith factual basis for your Affirmative Defense(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by you to refer or relate in any way to the facts you contend support your Affirmative Defense(s);

(b) Describe comprehensively and in detail all bases, both factual and otherwise, documents, notes, memorandum, reports, or other documentation in whatever form, that support or substantiates your denials of any of the paragraphs of Plaintiffs' Complaint.  Please state:

  i.  The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

  ii.  Identify all documents that support or explain any of these facts.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

## **INSTRUCTIONS**

1.  You are instructed to promptly amend or supplement any and all responses made hereto if you learn that any response to these interrogatories, requests for production, and/or requests for admission was incomplete when made or is no longer complete or correct.

2.  Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

3.  If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

4.  Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

5.  For each document responsive to any request that is withheld under a claim of privilege, provide a privilege log containing the following information:

    a.  The date the document was prepared or created;

    b.  The name and title of the author or authors of the document;

    b.  A summary of the subject matter of the document;

    c.  The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    d.  The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    e.  A statement of the basis on which privilege is claimed; and

    f.  The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

Please refer to the definition section listed above.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiff's Interrogatories, identified in your responses to Plaintiff's Interrogatories, or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim files from the home, regional, & local offices, third party adjusters/adjusting firms, and ladder assists regarding the claim that is subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

3.

A certified copy of the insurance policy pertaining to the claims involved in this suit.

4.

The Complaint Log you are required to keep for windstorm/hail complaints in the state of Georgia filed over the past three years.

5.

Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm/hail claims in the state of Georgia from March 19, 2018 to present.  If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

6.

Any and all weather reports in your possession for the Insured Property on March 19, 2018, regardless of whether you relied upon them in making your claims decision in this matter.

7.

The Operation Guides which relate to the handling of windstorm/hail claims in the state of Georgia in effect from March 19, 2018 to present. If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

8.

The field notes, measurements, electronic diary, and file, including all electronic and paper notes created, obtained, or maintained by the claims personnel, contractors, adjusters, and engineers who physically inspected or adjusted Plaintiff's claim for the subject property.

9.

The emails, instant messages, and internal correspondence pertaining to Plaintiff's underlying claim.

10.

Defendant's internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling windstorm/hail claims in the state of Georgia that were issued from January 1, 2018 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines that pertain to the handling of claims arising out of windstorm/hail claims in the state of Georgia. In the event you utilize published guidelines of "off the shelf"

software, without modification, as your guidelines, you may respond by simply identifying the name, version, and/or edition of the published guidelines you use.

12.

The documents, manuals, and training materials, including audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting property claims in the state of Georgia and in effect from January 1, 2018 to the present.

13.

"Pay sheet," "Payment Log," or list of payments, as well as copies of any and all checks or payments made on Plaintiff's claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents or representatives; all payments issued to independent adjusters, ladder assists, and engineers retained in your adjustment of this claim; and all expenses incurred by you in your adjustment of this claim.

14.

The documents reflecting reserves applied to the subject claim.

15.

The bonus or incentive plan for the managers, adjusters, and claims representatives responsible for windstorm/hail claims in the state of Georgia in effect for the time period of January 1, 2018 through the present.

16.

For the past five years, the portions of the personnel file of the adjuster(s) involved in handling Plaintiff's claim that pertain to disciplinary actions associated with claims handling, and performance under a bonus or incentive plan.

17.

The documents reflecting your criteria and procedures for the selection and retention of independent adjusters and engineers handling windstorm/hail claims in the state of Georgia from January 1, 2018 through the present.

18.

If a third party engineer evaluated the subject property, provide the documents that show the number of other matters in which the same engineer or engineering firm were retained by you to evaluate other properties in the state of Georgia over the past five years.

19.

The contract between the Defendant insurer and the Defendant third party adjusting company.

20.

The correspondence between the Defendant insurer and the third party adjusters/adjusting firms, engineers and other estimators who worked on the claim that pertain to the Claim at issue.

21.

All documents submitted to or received from each person you expect to call as an expert witness at trial, including, but not limited to, a list of all publications authored by the witness, a list of all other cases in which the witness has testified as an expert at trial or by deposition, a current *curriculum vitae* for the witness, all reports generated by the witness, and all documents and tangible things reasonably relied upon by the witness in forming his or her expert opinion.

22.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 1.

23.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 2.

24.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 3.

25.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 5.

26.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 11.

27.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 12.

28.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 21.

29.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 23.

30.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 24.

It is requested that the aforesaid production be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this 9th day of March, 2 0 2 0.

RESPECTFULLY SUBMITTED,

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Attorneys for the Plaintiffs
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

<u>VERIFICATION</u>

STATE OF _____ )
                                ss:
COUNTY OF _____ )

_____ being duly sworn, deposes and says that I am the Defendant in this action, that I have read the foregoing answers to interrogatories and request for production of documents and know the contents thereof, and the same are true to my knowledge, information and belief.

Therefore, I certify under penalty of perjury under the laws of the State of Georgia that the foregoing Answers/Responses to the Plaintiff's First Set of Interrogatories and Request for Production of Documents Directed to the Defendant are true and correct.

_____
Signature of Authorized Agent for Defendant
Print Authorized Agent for Defendant's Name: _____

Sworn to and subscribed before me this the _____ day of _____ 2 0 2 0 __.

_____
Notary Public: _____

E-FILED IN OFFICE - NS
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**20-C-01686-S1**
**3/9/2020 4:32 PM**

*[signature]*
CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MSJ REX HOLDINGS, LLC, d/b/a** | ) |
| **SHELL FOOD MART,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION FILE NO.:** |
| | ) <u>**20-C-01686-S1**</u> |
| **NATIONWIDE MUTUAL INSURANCE** | ) |
| **COMPANY,** | ) |
| a foreign corporation, | ) |
| | ) |
| **Defendant.** | ) |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant Nationwide Mutual Insurance Company ("Nationwide") by serving them with the ***Summons, Complaint and Exhibits***, as well as ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to the Defendant Nationwide at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant Nationwide**
**40 Technology Parkway South, Suite 300**
**Norcross, GA 30092**

Respectfully submitted, this the 9th day of March, 2 0 2 0.

For: The Huggins Law Firm, LLC

*[signature]*

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com